J. S. SNELL, JR., *et al.* Plaintiffs in Error, *vs.* WILLIAM L. HILL, Trustee, *et al.* Defendants in Error.

*Opinion filed April 23, 1914.*

1. VENDOR AND PURCHASER—*when purchaser becomes equitable owner of land.* One who enters into a written contract with an agent having the exclusive sale of land and the trustee holding the legal title, and who thereafter pays for the land according to the contract and enters into possession, is the equitable owner of the land and is entitled to demand a conveyance of the legal title.

2. SAME—*when contract for purchase of land is notice to subsequent purchasers.* A recorded contract for the purchase of land made with the owner's authorized agents, coupled with open, notorious and continued possession under it, is notice of the equitable owner's interest in the land to all subsequent purchasers.

3. SPECIFIC PERFORMANCE—*when purchaser from party to contract may be required to execute deed.* A third person who accepts a conveyance of land with full knowledge of a prior contract by his vendor for its sale holds the land in trust for the original vendee, and a court of equity having jurisdiction of the subject matter and of the person of the third party may compel him to carry out the contract, though it has no jurisdiction of the original vendor.

4. SAME—*when equitable owner is not chargeable with laches.* An equitable owner of real estate under a written contract of purchase, who has paid the consideration for the same and who is in possession of the premises, is not chargeable with *laches* in seeking specific performance of the contract while he is in such possession.

5. LIS PENDENS—*parties acquiring title after suit brought are bound by decree.* Parties who purchase land after a suit is begun to require their vendor to carry out a prior contract for the sale of the land to the father of the complainants, and who become parties to the suit by an intervening petition, take subject to the complainants' rights and are bound by the decree.

WRIT OF ERROR to the City Court of East St. Louis; the Hon. MORTIMER M. MILLARD, Judge, presiding.

D. J. SULLIVAN, for plaintiffs in error.

SCHAEFER & KRUGER, for defendants in error.

.Mr. JUSTICE CRAIG delivered the opinion of the court:

Plaintiffs in error, complainants in the court below, filed their bill in chancery for the specific performance of a contract for the conveyance of certain real estate in the city of East St. Louis. The bill alleges that the father of the complainants, J. S. Snell, Sr., on May 16, 1891, entered into a contract with the owners of said real estate, the material parts of which are as follows:

"*May 16th, 1891.*

"In consideration of a good warranty deed, to be delivered on completion of a contract, of a certain tract of land, being one hundred feet by one hundred and fifteen to alley, on the corner of Cahokia street and Porter avenue, in Dexter's Third addition to East St. Louis, St. Clair county, State of Illinois, and an equal amount facing the south on Tudor avenue and directly in the rear, I, J. S. Snell, party of the first part, with Dexter & Co., of East St. Louis, party of the second part, hereby agree to do work on Dexter's Second and Third addition to East St. Louis, grading the streets in said addition as follows, [describing nature of work and price to be paid per foot for moving dirt and price per cubic yard,] and after finishing all work needed in said addition, if the purchase price of said lot, which is $2000, is not yet exhausted, then the grantee shall give back a mortgage to secure the balance remaining unpaid.          Party of the first part, DEXTER & BRO.
George Grave, witness.                    Per William L. Hill, trustee.
          Party of the second part, J. S. SNELL."

The complainants further aver that after said tract was platted, the portion referred to in the contract as fronting on Piggott avenue became lots 15 and 16, in block 4, in Dexter's Third addition to the city of East St. Louis; that in preparing said contract the tracts conveyed were not described as lots, for the reason that the land had not then been platted. Complainants further aver that in pursuance of said contract said J. S. Snell, Sr., performed labor upon said streets until they were completed; that upon completion of said work a settlement was had between said Snell and Charles Dexter and William L. Hill, trustee, and it was found that the work performed by said Snell amounted to over $1000, which was not sufficient to pay for both tracts of land, and it was agreed that said Snell should sur-

render the tract of land facing on Tudor avenue, which he did, and was to have a proper deed of conveyance conveying to him said lots 15 and 16, in block 4, of Dexter's Third addition to the city of East St. Louis; that since the settlement aforesaid said Snell has been entitled to a deed of conveyance for the said premises; that from the making of said contract until his death said Snell had been in possession of said premises, except for the past ...... years one Edward Burroughs has wrongfully entered upon said premises and now claims some interest, but complainants aver that he is a trespasser and without right or title to said premises; that said Snell departed this life, intestate, January 23, 1909, leaving no widow, but leaving surviving him the complainants, his only heirs-at-law; that said Snell repeatedly demanded of Charles Dexter and William L. Hill, trustee, a proper deed of conveyance conveying the lots in question, but that said Dexter and Hill neglected to execute and deliver to said Snell any deed of conveyance to said premises; that shortly after said Snell became entitled to such deed said Dexter and Hill became, and have ever since continued to be, non-residents of the State of Illinois, and their place of residence has ever since been unknown to said Snell and the complainants. The bill makes various parties defendants, including Edward Burroughs, J. A. Ferguson, of Denver, Colorado, and Wyllian W. Dexter, whose place of residence is unknown. The bill was filed April 7, 1909, and the first insertion of the publication notice to the non-residents was made April 8, 1909, and notices were mailed by the clerk on April 15, 1909.

Edward Burroughs filed an answer denying the allegations of the bill, and while the decree makes no reference to him or his rights, it does not appear that he has any rights in the premises and he has not joined in the writ of error, so it is not necessary to consider him in the matter.

At the December term, 1909, proof was made of publication and a decree *pro confesso* was entered against J. A.

Ferguson. At the August term, 1910, the defendants in error Thomas J. Canavon and G. L. Tarleton filed their petition, alleging, among other things, that at the commencement of said suit the alleged title to lot 16, in block 4, of Dexter's Third addition to the city of East St. Louis was vested of record in the said J. A. Ferguson, and that he claimed to be the legal and equitable owner thereof; that said Ferguson and wife conveyed said lot to A. C. Fritz, and on the 27th day of May, 1910, said Fritz for a valuable consideration conveyed said lot to the petitioners, who now claim to be the real and equitable owners thereof; that they are the successors in interest of said Ferguson to said lot by virtue of said conveyances, having acquired their title since the commencement of this suit, and further show that neither of them had notice of the *pro confesso* decree entered in this cause until after they acquired title to said real estate, and that said Ferguson has not been summoned or served with a copy of the bill in the case or received any notice of the pendency of this suit. Petitioners ask to be made parties and allowed to answer, and that the *pro confesso* decree. be set aside. The petition was allowed, and said Canavon and Tarleton filed their answer to the bill of complaint, setting up *laches* and the Statute of Limitations as a defense; denying most of the allegations of said bill, but admitting that by the platting of said land the property referred to in the contract as fronting on Piggott avenue became said lots 15 and 16.

The cause was referred to a master in chancery and evidence was taken, and from the evidence it appears that the land of which lots 15 and 16 are a part was in the year 1890 conveyed by the owner thereof, Eldred R. Baker, to William L. Hill, trustee, for John A. Ferguson, Charles Dexter and said William L. Hill, and to his successors in trust, to manage and dispose of said property for the benefit of the said Ferguson, Dexter and Hill, with full power to sell said property at public or private sale, etc. The trust

agreement entered into between said Ferguson, Dexter and Hill recites that they have formed an association for the purpose of buying, improving and selling a certain tract of real estate that they were about to buy from Baker; that the title was to be held in the name of Hill, as trustee; that their interests were, Hill three-eighths, Ferguson three-eighths and Dexter one-fourth; that said Hill, as trustee, should cause to be expended upon the property, in platting and otherwise preparing it for market and in erecting buildings thereon, such sums as should be contributed by the parties thereto according to their respective interests; that said Dexter should act as exclusive agent in negotiating the sale of the property by lots. The other provisions of the agreement relate to the compensation of the parties and the division of the profits of the property sold, and also provide that said trustee be authorized to sell and convey said real estate subject to the contracts made by said Dexter. It further appears from the evidence and as set out in the bill of complaint, that J. S. Snell, Sr., on May 16, 1891, entered into the contract in question and within the next few months performed work on said streets with teams, machinery and laborers to about $1000 in value, and that it was agreed by the Dexters and Hill and Snell that Snell should have said lots 15 and 16 for such work and the balance of said property should go back to the owners. It further appears that upon the completion of said work the owners agreed to make Snell a deed to said lots 15 and 16 but put him off on various pretexts; that about the time of the completion of the contract said Snell took possession of said lots 15 and 16 and built a large barn thereon and kept a number of horses there for several years; that about eight years after he took possession he sold the property to a man named Sutton; that a house was built on the property, but Sutton did not pay for the property and Snell by some arrangement with Sutton resumed possession; that he afterwards rented the premises to the defendant Bur-

roughs, and in 1904 recovered possession of said property from Burroughs in a forcible detainer suit; that none of the papers relating to the transfer to Sutton, or from Sutton to Snell, if any, were recorded, and the original contract of Snell with Dexter and Hill for the purchase of the premises was not recorded until 1900. It also appears that Dexter and Hill left the State soon after the completion of the contract with Snell.

The defendants offered in evidence a deed from William L. Hill, trustee, to J. A. Ferguson, conveying lots 16 and other property, dated May 15, 1901. The deed was acknowledged in the city of Paris, France, where Hill was apparently living at that time. This deed warrants the title against the lawful claims and demands of all persons claiming by, through or under him but against the claims of no other person or persons whatsoever. Defendants also offered a quit-claim deed from John Albert Ferguson to the J. A. Ferguson Investment Company, dated November 20, 1908; also a quit-claim deed dated February 10, 1909, from the J. A. Ferguson Investment Company to John Albert Ferguson. This deed is signed by the J. A. Ferguson Investment Company, by J. A. Ferguson, president, and was recorded March 13, 1909. Also a deed from John Albert Ferguson and wife to A. C. Fritz, dated May 26, 1910, recorded June 23, 1910. The consideration in this deed is $10. The defendants also offered a quit-claim deed from A. C. Fritz to Thomas J. Canavon and G. L. Tarleton, the consideration of which is one dollar, dated May 27, 1910, recorded December 30, 1910. The record also shows the taxes were paid for 1892-93 by Charles Dexter and W. K. Dexter, and for the years 1894-95 by William L. Hill. It does not show who paid the taxes for 1896. The taxes were paid by William L. Hill, trustee, from 1897 to 1900, inclusive, and from 1901 to 1908, inclusive, by J. A. Ferguson.

The court decreed lot 16 to be the property of defendants in error Thomas J. Canavon and G. L. Tarleton and

granted the relief prayed by plaintiffs in error as to lot 15. Plaintiffs in error have brought the case to this court by writ of error, assigning as error the finding of the court, by its decree, that the complainants were not entitled to the relief prayed for as to lot 16.

It appears from the foregoing record that the father of plaintiffs in error, J. S. Snell, Sr., entered into a written contract for the purchase of said lots 15 and 16. Some comment is made by counsel for defendants in error about the parties to the contract, but we think it sufficiently appears from its terms, and from the terms of the trust agreement under which the property was held, that Dexter, as the agent having the exclusive sale of the lots, entered into the contract with the father of plaintiffs in error, and said Hill, as trustee, who held the legal title to the property, signed said contract. It further appears that said Snell completed the payment for a portion of the property, and it was agreed he was to have such portion, and he never made any claim to the rest of the property embraced in said contract. His position, then, was this: He had a contract to purchase said lots 15 and 16 and fully paid for the same and was entitled to a deed from the trustee. Pursuant to said contract of purchase and payment he entered into possession of said lots, and he and his heirs-at-law, the plaintiffs in error, have been in possession ever since. The only person who has been in possession besides Snell, Sr., and plaintiffs in error is Burroughs, and he does not seem to have any right in the premises and has shown no right or title to the same in any way, so that, so far as plaintiffs in error and defendants in error are concerned, said Snell, Sr., during his lifetime, and plaintiffs in error since his death, may be considered as being in possession of said property. For this reason much of the argument of the defendants in error, and the authorities cited by them as to *laches* and limitations, do not apply in this case. J. S. Snell,

Sr., under the circumstances, was the equitable owner of said premises and was in possession.

In the case of *Chicago and Eastern Illinois Railroad Co.* v. *Hay,* 119 Ill. 493, this court held that where a railway company has performed its part of a contract for the purchase of a right of way over a tract of land and has entered into possession of the same with the owner's consent, the company will become the equitable owner of the right of way, and its continued possession, and that of its successor, will be notice to all subsequent purchasers of the land from the original owner of its equitable rights. It was also held in that case that the doctrine of *laches* had no application where the company has entered into possession of the strip of land contracted for and been in possession ever since, although a bill for specific performance of an agreement to convey the strip of land in question was not filed until fourteen years after the contract was made.

In the case of *Chicago, Burlington and Quincy Railroad Co.* v. *Boyd,* 118 Ill. 73, it was held that the actual possession of a tract of land by a railway company under a verbal contract for a conveyance to be made upon the performance of certain conditions, is notice to any subsequent purchaser from the party with whom the verbal contract was made, of all such rights as the company may have in the premises.

In the case of *Barlow* v. *Robinson,* 174 Ill. 317, it was held that possession of land under a bond for deed executed by the vendor during infancy is notice to subsequent purchasers not only of the existence of the bond but of any acts in affirmance thereof done by the vendor after attaining her majority. On page 320 of the opinion a number of cases are cited holding that possession is notice, and such has always been the law in this State.

In the case of *Grafton Stone Co.* v. *St. Louis, Chicago and St. Paul Railroad Co.* 199 Ill. 458, it was held that if a parol agreement between the land owner and a railroad

company for the conveyance of a right of way is carried out by the company and the railroad constructed, the possession of the railroad company is notice of its rights to subsequent purchasers and the agreement is binding upon the original owner and his grantees; that the railroad company was not guilty of *laches* in failing to file a bill for specific performance and an injunction until suit was brought against it for possession.

In *Bragg* v. *Olson,* 128 Ill. 540, this court held that when the purchaser of land, in 1862, was let into immediate possession and occupied and improved the premises up to his death, in 1867, and his widow and heirs continued in such possession for twenty years or more, upon a bill filed by the widow and heirs for a specific performance of the contract the defense of *laches* could have no application. See, also, *Hall* v. *Peoria and Eastern Railway Co.* 143 Ill. 163.

In the *Hay case, supra,* the court, in its opinion by Mr. Justice Sheldon, says: "The contract proven, then the equitable title of the ground in question was in the Chicago, Danville and Vincennes Railroad Company, from which company it passed to the present complainant. There was after but the bare legal title in Hay, who made the contract, which he held in trust for the benefit of the railroad company, and all subsequently taking such title under him took it charged with the same trust, being affected with notice thereof from the occupation and use of the ground for the railroad. The objection of *laches* which is made, so far as respects the remedy for specific performance, is without application to such a case as this. (Pomeroy on Specific Performance of Contracts, sec. 404.) The railroad company had entirely performed on its part and was in full possession and enjoyment of the property with the consent of Alexander D. Hay. Nothing remained to be done but for the former owner to make conveyance of the legal title. The doctrine is, that from the time of the contract for the

sale of land, the vendor, as to the land, becomes a trustee for the vendee, and the vendee, as to the purchase money, becomes a trustee for the vendor, who has a lien upon the land therefor. No lapse of time is a bar to a direct trust as between trustee and *cestui que trust.* (*Decouche* v. *Savetier,* 3 Johns. Ch. 190.) At least time begins to run against a trust only from the time when it is openly disavowed by the trustee who insists upon an adverse right or interest which is fully and unequivocally made known to the *cestui que trust.* (*Oliver* v. *Piatt,* 3 How. 411.) The railroad was built and operated over the premises with the consent and acquiescence of Alexander D. Hay, who made the contract, until his death, in June, 1873, and subsequently was operated, without question of the railroad company's right, till in the spring of 1878, when Blakeley, the right of way agent, applied to defendant Hay for the deed of one hundred feet. There is manifestly no *laches* to bar specific performance."

The defendants in error acquired title to this property, as shown by their intervening petitions as well as the record of their deed, after the bill in this case was filed. The father of plaintiffs in error bought the property under a written contract. He paid for the property and was entitled to a deed. He was in open, notorious and exclusive possession of said property, and his contract was recorded before any of the rights of defendants in error which are in issue in this proceeding arose. He was the equitable owner and lacked merely a deed conveying the legal title to make him the complete owner.

The bill filed in the case is a bill for specific performance of the contract entered into between the former owners of the lots and the father of plaintiffs in error. Personal service was not had on the defendants to the bill who were parties to the contract, nor their grantee, Ferguson, who held the record title when the suit was commenced. We held in the case of *Fowler* v. *Fowler,* 204 Ill. 82, and

in prior cases cited in that opinion, that a decree of specific performance for the sale of land cannot be rendered against a non-resident vendor brought into court by publication, only. In the same case, however, in which an exhaustive opinion was delivered by Mr. Justice Magruder, this court further held that a third party who accepts a conveyance of land with full knowledge of a prior contract for its sale to another holds the land in trust for the original vendee, and a court of equity having jurisdiction of the subject matter and of the person of such third party may compel the latter to perform the contract, even though it is without jurisdiction to enforce the decree against the vendor. The opinion quotes at length from Story's Equity Jurisprudence and Pomeroy on Specific Performance in support of such holding. In the case at bar Ferguson was one of the original owners of the property, which was held in trust, as we have shown, for himself and the other owners. He received a deed from the trustee after the contract of the father of plaintiffs in error was filed for record. The defendants in error acquired the title of Ferguson after this suit was commenced and by their intervening petition became parties to the suit, so that all the parties in interest in the premises were in court and subject to its jurisdiction, and defendants in error took their title *lis pendens,* with notice of the rights of plaintiffs in error. The bill, while in form a bill for specific performance, was in the nature of a bill to quiet title, and will be so treated. It concludes with a general prayer for relief, and no objection was made to the form of the bill. The sole issue raised by the pleadings and urged in the arguments of counsel of the respective parties was the ownership of the property.

For the reasons given, that part of the decree of the city court of East St. Louis which decreed that defendants in error Canavon and Tarleton are the owners of lot 16 will be reversed and the cause remanded to that court, with directions to enter a decree finding that plaintiffs in error,

as heirs-at-law of J. S. Snell, Sr., are the owners of said lot 16, and that defendants in error Canavon and Tarleton, by proper deed of conveyance, convey to plaintiffs in error all their interest in said lot 16 within thirty days from the entry of such decree, and in default of their compliance with said decree that the master in chancery of said court make and deliver such deed.

*Reversed in part and remanded, with directions.*