(No. 26581.—

HARRY G. THOMAS, Appellee, *vs.* BLANCHE B. POPE *et al.*— (J. A. MURPHEY, Appellant.)

*Opinion filed September 21, 1942.*

RUSSELL, RUSSELL & RUSSELL, for appellant.

J. L. SPAULDING, and L. D. SPAULDING, JR., (JOSEF T. SKINNER, of counsel,) for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is an appeal by J. A. Murphey from a decree of the circuit court of Bureau county directing the specific performance of a contract to convey real estate. The suit was brought by Harry G. Thomas, appellee, as plaintiff, against Blanche V. Pope and Ezra Pope, her husband, J. A. Murphey and Mabel Murphey, his wife, and Ralph B. Murphey and Nell Murphey, his wife. Certain other defendants who were crop tenants on the land involved, together with the trustee named in a mortgage outstanding against the property and the holders of the indebtedness secured by said mortgage, were also named as defendants. All defendants were defaulted except appellant. An answer was filed by him and the cause was tried on the complaint and

the answer thereto and the bill as confessed by the defaulting defendants.

The claim of appellee of the existence of the alleged contract on which he based this suit was an ad published in a newspaper in Princeton, Bureau county, on June 19 and June 26, 1941. The ad is as follows:

"FOR SALE—At Auction, Thursday, June 26, settle estate. Improved farm, 211 acres, Sect. 30, Selby Precinct, Bureau Co., 70 acres under cultivation, balance timber land pasture, good house, barn, chicken houses, electricity, etc. Offered for quick sale, settlement, settle estate. Buyer can move on at once, have pastures, our share 1941 crops. J. A. Murphey, 630 East Peru, Princeton. 23-26."

The above ad was supplemented by handbills which appellant caused to be published and distributed. These handbills in so far as material are as follows:

"STOCK FARM AT PUBLIC AUCTION
Thursday, June 26, 1941.

Beginning at 1 P.M. on the farm five miles southeast of Princeton, on the Searl's Ridge road or four miles west of DePue.

TO SETTLE AN ESTATE

I will sell at auction a good stock farm consisting of 211 acres in Section 30, Selby Precinct, Bureau County. Offered for sale for immediate settlement and will give immediate possession."

Appellee alleged in his complaint that the property described therein was owned by appellant and Blanche B. Pope and Ralph B. Murphey as tenants in common, that appellant caused said ad to be published with the express approval, consent and authority of Blanche B. Pope and Ralph B. Murphey; that he attended the sale on the day it was advertised to be held and bid on the property; that he was the highest bidder therefor; that on the following day he paid ten per cent of his bid to the clerk of the sale and was entitled to a deed to the property described in the complaint; that said payment was accepted by appellant on behalf of himself and his co-tenants and that appellant and his co-tenants had refused to execute a deed to said prem-

ises and complete the sale. It will be noted in this connection that appellee nowhere alleged in his complaint that the premises were knocked off or sold to him by the auctioneer. He alleges, however, that the premises were offered for sale to the highest and best bidder; that he was the highest and best bidder and that the premises "were sold" to him.

At the conclusion of the hearing in which the evidence was heard in open court, the court entered a decree directing appellant and his co-tenants Blanche B. Pope and Ralph B. Murphey, together with their respective spouses, to execute a deed conveying the premises described in the complaint, by the definite legal description set out in the decree, to appellee within ten days from the date of the decree.

In the course of the hearing, appellee had deposited with the clerk of the court the balance of his bid. By the decree the court ordered that the deed be deposited with the clerk; that upon said deed being so deposited the clerk apply the money deposited with him, first, to the payment of delinquent taxes for the year 1940 against the property and, second, to the payment of the mortgage debt aggregating $2068.89; that after such payments were deducted from the money on deposit, the balance be paid over, by the clerk, to appellant and his co-tenants and that appellee be let into possession of said real estate in accordance with said decree. To reverse that decree appellant has perfected the appeal to this court.

The first objection raised by appellant is that the alleged contract was not in writing and was, for that reason, invalid and unenforceable under section 2 of the Statute of Frauds. Ill. Rev. Stat. 1941, chap. 59, par. 2.

This objection would have to be sustained had appellant invoked the statute in his pleadings or in any other appropriate manner in the court below. This he did not do. The rule is well settled that the defense that the contract sued on is void under the Statute of Frauds must be spe-

cially pleaded and cannot be raised for the first time on appeal. *McCrystall* v. *Connor*, 331 Ill. 107; *Highley* v. *Metzger*, 187 id. 237; *Sanford* v. *Davis*, 181 id. 570; *McClure* v. *Otrich*, 118 id. 320.

Appellant, therefore, not having in any manner invoked the Statute of Frauds as invalidating the contract, by his pleadings or otherwise in the court below, cannot now rely upon the statute in defense of the action in this court.

Where the Statute of Frauds is not properly invoked by the pleadings as a defense to the action, a verbal contract for the conveyance of land may be enforced. Such a contract, however, must contain all the elements necessary to the specific performance of an agreement in writing except the written memorandum required by the Statute of Frauds. (4 Pomeroy's Eq. Jur. 3d ed. sec. 1409.) The contract, however, to be enforceable, must be certain and must be concluded so that it can be seen that the parties have agreed on the same terms and mutually signified their assent thereto. If what passed between them was but a treaty or negotiation, or an expectation of a contract, or an agreement between them of an honorary nature, no specific performance can be had. *Weir* v. *Weir*, 287 Ill. 495; *Kane* v. *Hudson*, 273 id. 350; *Tryce* v. *Dittus*, 199 id. 189; *Wood* v. *Davis*, 82 id. 311.

In determining whether or not the verbal contract relied upon in this case was completed and assented to by both parties, it is hardly necessary to consider anything in the record other than the testimony of appellee. The substance of his testimony is that he appeared at the sale shortly after the appointed time, in response to the ad. He did not reach the place of the sale, however, until after the sale began. Others were bidding on the real estate when he arrived. He testified that the auctioneer made the statement, "If you want to buy this land, get in and bid on it; this farm must be sold." Appellee did not bid on the farm until later. After some bids were received, fur-

ther bids on the land were deferred and the auctioneer then proceeded to sell the personal property which was advertised in the sale bill. The land was then put up a second time. At that time appellee testified he made the last bid of $4853. He stated that he was bidding on the 211 acres that were advertised. After appellee had made this bid the property was not knocked off or sold to him. Further bids were sought. After an effort to receive higher bids the auctioneer talked to appellee privately and told him he could buy the land if he would raise his bid two dollars per acre. To this appellee replied that he considered he had already bought the property. He asked the auctioneer to call appellant over to where he and the auctioneer were standing; that appellant then joined them. At that time appellee stated, "Mr. Murphey, you have been trying to sell this land, and I came down here and got the last bid, and I consider I bought the place, and I will show you I am going to have it." Appellee further testified: "I got on my horse, and I stopped and talked with the clerk of the sale, George Zearing, and I repeated it. I told him, George Zearing, I considered I bought this farm, and I want you to know I am going ahead with it; and I will show you I am going to have that farm." Both the auctioneer and appellant testified that in this conversation following appellee's bid, appellee was told definitely by them that they would not sell the farm at his bid; that they must have at least two dollars per acre more; that when appellee refused to raise his bid, appellant stated to the auctioneer in the presence of appellee that he would withdraw the farm from the sale and would not sell it for appellee's bid.

Giving to appellee the most favorable construction of his own version of what happened at the sale, the transaction fell far short of a contract to sell the land. Moreover, appellant testified that during the bidding, the auctioneer had made the statement that the land was to be sold free and clear of all encumbrances; that when that

statement was made by the auctioneer, it was immediately corrected by appellant. That appellant stated that there was a mortgage of something like $3000 on the farm and the purchaser would have to take the farm subject to the mortgage. This testimony was not denied by anyone. Appellant was corroborated to some extent by the auctioneer and other witnesses in his testimony that this statement was made by him at the sale. Notwithstanding this evidence, the court decreed that the mortgage be paid out of the purchase price so that appellee on his bid was decreed to be entitled to a conveyance of the land free and clear of the mortgage debt.

Waiving all other questions in the case there is not sufficient evidence in the case to support the finding of the decree that an enforceable contract was made for the sale of the land. The evidence was wholly insufficient, even if all the testimony offered in behalf of the defendant be wholly disregarded.

There is another reason why the alleged contract even if proven cannot be specifically enforced. The dealings between the parties were wholly indefinite and uncertain, not only as to whether the land was to be sold free and clear of the mortgage debt or subject thereto, but nowhere in the negotiations are we able to find any description from which the property could be identified. The contract was fatally defective for this reason if for no other. There was no description either in the ad or in the handbills from which the property could be located or identified. The meager and indefinite reference to the location of the land to be offered for sale, would apply equally to any 211 acres located in section 30 in Selby precinct. There is no proof and no claim that anything was said at the sale by anyone from which the land could be identified. The alleged contract was wholly lacking in this respect.

The rule is well settled that a verbal contract, if established, must be definite and certain in all respects and must

contain all of the elements which would be necessary to the validity of a written contract for the conveyance of land. In this case there is nothing in the record to identify the land or from which it can be identified. The only reference in the published notice as to the description of the land is "Improved farm, 211 acres, Sect. 30, Selby Precinct, Bureau Co., 70 acres under cultivation, balance timber land pasture, good house, barn, chicken houses, electricity, etc." The only description contained in the handbills is as follows: "Stock Farm at Public Auction, Thursday, June 26, 1941. Beginning at 1 P. M. on the farm five miles southeast of Princeton, on the Searl's Ridge road or four miles west of DePue. To Settle an Estate I will sell at auction a good stock farm consisting of 211 acres in Section 30, Selby Precinct, Bureau County. Offered for sale for immediate settlement and will give immediate possession."

It is elementary that in order to enforce specific performance of a contract for the sale of land the contract must be complete in itself. It must definitely point out the land to be conveyed and furnish the means of identifying the land before a court of equity will decree specific performance. Where the description is indefinite or ambiguous on the face of the contract itself the uncertainty of description cannot be cured by extrinsic evidence. *Crocker* v. *Smith,* 366 Ill. 535; *Daytona Gables Co.* v. *Glen Flora Co.* 345 id. 371; *Holm* v. *Lynd,* 343 id. 645; *Hogan* v. *Orr,* 341 id. 58; *Heroux* v. *Romanowski,* 336 id. 297; *Weber* v. *Adler,* 311 id. 547.

The decree will have to be reversed. While it is true that only appellant appealed from the decree, the decree is a unit. It was alleged in the complaint that the advertisement and handbills were published and signed by appellant with the express consent and approval of his co-tenants. There is no proof in the record to sustain this allegation. There is no evidence that the co-tenants had anything to do with the negotiations between appellant and appellee or

that they ever ratified or approved anything appellant did in connection therewith. There is no proof of any kind or character in the record that the spouses of appellants ever made any agreement of any kind or in any way participated in the negotiations, but they are ordered by the decree to join in the deed. Moreover, appellant's co-tenants, Blanche B. Pope and Ralph B. Murphey and their respective spouses were not residents of the State of Illinois and were served only by publication. The rule is settled in this State that the court has no jurisdiction to enter a decree for the specific performance of a contract, however lawfully made or definitely established, where such parties are not served personally but only by publication. A suit for the specific performance of a contract is an action *in personam* and not *in rem*. In *Snell* v. *Hill,* 263 Ill. 211, it was said, "We held in the case of *Fowler* v. *Fowler,* 204 Ill. 82, and in prior cases cited in that opinion, that a decree of specific performance for the sale of land cannot be rendered against a non-resident vendor brought into court by publication only."

A decree *in personam* for a specific purpose against the person of the defendant who was served only by publication cannot be entered and is beyond the jurisdiction of the court. The court cannot decree specific performance of a contract against a nonresident who has been served only by publication. (*Chapman* v. *Northern Trust Co.* 296 Ill. 353.) The contract in this case cannot, by any stretch of imagination, be brought within the above rules.

For the errors indicated, the decree of the circuit court of Bureau county is reversed.

*Decree reversed.*