CALVARY TEMPLE ASSEMBLY OF GOD, Plaintiff-Appellee, v. EUGENE LOSSMAN et al., Defendants-Appellants.

Second District   No. 2—89—0999

Opinion filed July 20, 1990.

Hercules Paul Zagoras & Associates, Ltd., of Waukegan (Hercules Paul Zagoras, of counsel), for appellants.

Robinson & Brebner, of Lake Bluff, Lee A. Sparks, of Law Office of Lee A. Sparks, of Zion, Mark H. Beaubien, Jr., of Lake Zurich, and Larry M. Clark, of Mundelein (Thomas A. Robinson, of counsel), for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendants, Edward Lossman, Harvey Lossman, and Doris Lossman, appeal from a circuit court order granting specific performance of a real estate sales contract to plaintiff, Calvary Temple Assembly of God. Defendants contend that: (1) by its own terms, plaintiff's offer

to purchase the real estate expired before it was accepted by defendants; (2) the court erred by receiving evidence of the size and location of a parcel of the real estate in order to carve out a life estate for one of the sellers; (3) the court erred in finding that the conditions of the contract had been performed or waived; and (4) the court erred in excluding the testimony of an appraiser who had not been revealed pursuant to Supreme Court Rule 220 (107 Ill. 2d R. 220) but whose appraisal had been provided to plaintiff nine months prior to trial. We reverse.

As we have decided this case on the issue related to the life estate reserved in one of the sellers, we will present only those facts pertinent to that issue.

This suit involves the sale of a 31.1-acre piece of property owned by four brothers, Edward, Alvin, Eugene and Harvey Lossman. Eugene lives in a house on the property with his wife Dorothy, and Harvey lives in a second house on the property with his wife Doris. Alvin died in January 1987.

On March 19, 1987, Calvary prepared a "Contract to Purchase Real Estate." This contract was sent to attorney Mark Beaubien, who represented Eugene and Dorothy. The contract proposed giving a life estate to Harvey in "the residence which he occupies on the subject property." Closing for the transaction never occurred although attempts to close were made as late as July 31, 1987.

Calvary filed its complaint on February 3, 1988, seeking only specific performance. Calvary filed an amended complaint on June 22, 1988, also seeking only specific performance. Harvey and his wife Doris filed their answer and four affirmative defenses on August 3. A fifth affirmative defense was filed on November 16, alleging, *inter alia*, that the purchase price is so low as to shock the conscience of the community.

On December 28, Eugene and Edward filed a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619). The court denied this motion on February 8, 1989, and ordered an answer to be filed within 14 days. An answer and affirmative defenses were filed on February 21.

On August 23, the day of trial, Calvary filed a motion seeking leave to respond to the affirmative defenses filed by the defendants. The court allowed the responses to be filed *instanter*.

At the close of plaintiff's case, Doris, Harvey, and Edward moved for judgment. The court denied this motion. On August 28, Eugene and Dorothy moved the court to allow them to file their answer and affirmative defenses to Calvary's first amended complaint. The court

allowed the filing of the answer but denied the filing of the affirmative defense.

On August 31, the court entered judgment for Calvary and ordered Harvey, Edward, Eugene, Dorothy and Sarah, Alvin's widow, to perform the contract. The court also required Harvey to tender a warranty deed reserving for himself a life estate in his residence. The court included a legal description of the life estate. The court also ordered the homestead rights of Doris to remain unaffected. The trial court stayed enforcement of this order pending appeal. Harvey, Doris and Edward appeal from the court's order.

The rider to the contract stated, "Buyer shall grant to Harvey Lossman a life estate in the residence which he occupies on the subject property as of the date of the execution of this contract." Defendants contend that the description of the life estate reserved in Harvey was ambiguous and insufficient. Therefore, the court could not award specific performance. Plaintiffs claim that the phrase "in the residence which he occupies" is sufficient to identify the property and is unambiguous. Plaintiffs argue that the property does not have to be "so specifically described as to admit of no doubt as to what it is," and extrinsic evidence may be used to pinpoint the location of the property.

An award of specific performance is within the discretion of the trial court, and its decision will not be disturbed unless it is contrary to the manifest weight of the evidence and, thus, an abuse of discretion. (*Mearida v. Murphy* (1982), 106 Ill. App. 3d 705, 709.) In reviewing the propriety of the court's decree of specific performance, the essential inquiry is whether plaintiffs have established the existence of a valid and enforceable contract. (*Intini v. Marino* (1983), 112 Ill. App. 3d 252, 254.) A court will not decree specific performance if the existence of a valid contract is a matter of doubt. (*Milani v. Proesel* (1958), 15 Ill. 2d 423, 430.) Additionally, a judgment of specific performance is proper only when the contract sought to be enforced is clear, definite, and complete. (*Dodds v. Giachini* (1979), 79 Ill. App. 3d 358, 364, *rev'd on other grounds* (1981), 84 Ill. 2d 284.) The contract must, on its face, describe a particular tract of land and cannot rest partly in writing and partly in parol. (*Bliss v. Rhodes* (1978), 66 Ill. App. 3d 895, 897.) "Thus, the function of a court in a suit for specific performance is to enforce a contract as made by the parties and not to make a contract for them and then enforce the contract thus made." *Dodds*, 79 Ill. App. 3d at 364.

In *Thomas v. Pope* (1942), 380 Ill. 206, 213, our supreme court stated:

"It is elementary that in order to enforce specific performance of a contract for the sale of land the contract must be complete in itself. It must definitely point out the land to be conveyed and furnish the means of identifying the land before a court of equity will decree specific performance. Where the description is indefinite or ambiguous *on the face of the contract itself* the uncertainty of description cannot be cured by extrinsic evidence." (Emphasis added.) (*Thomas*, 380 Ill. at 213.)

Similarly, in *Dodds*, the plaintiffs sought specific performance of a lease. However, the space to be leased was not set forth in the agreement. The court, citing *Thomas*, held that specific performance could not lie. The court stated:

"While we feel that extrinsic evidence would provide the space the parties intended for the lease, Illinois law prohibits the use of extrinsic evidence to cure indefiniteness in an action for specific performance." (*Dodds*, 79 Ill. App. 3d at 364.)

The appellate court's decision was overruled by the supreme court on other grounds but this part of the appellate court's decision was confirmed. *Dodds v. Giachini* (1981), 84 Ill. 2d 284, 301.

In *McDaniel v. Silvernail* (1976), 37 Ill. App. 3d 884, the plaintiff had leased a certain portion of property owned by the defendant. The parties then entered into an agreement whereby the defendant agreed to sell this portion of land to the plaintiff. The agreement provided:

"I agree to sell to George McDaniel the house on R.R.2, in which he now lives, plus two acres, xxx for $6,000. to be agreed.

Alfreida Silvernail"

(*McDaniel*, 37 Ill. App. 3d at 886.)

The court determined that specific performance could not be granted as it was impossible to determine which two acres the plaintiff was buying. (*McDaniel*, 37 Ill. App. 3d at 887.) The court stated:

"Plaintiffs have attempted to cure the uncertain description. They argue parol evidence is admissible to show the .intention of the parties. However, the essential terms of a real estate contract must be wholly in writing. [Citation.] Extrinsic evidence is not permissible to cure a patent ambiguity. [Citations.] This agreement, to sell 'two acres, xxx for $6000. to be agreed,' is patently ambiguous. In order to be specifically enforceable the contract must be 'definite, certain, complete and conclusive.' " (*McDaniel*, 37 Ill. App. 3d at 887.)

In the case at bar, it is clear that the contract was ambiguous on its face. The only evidence to identify the life estate was that

it was Harvey's "residence." Apparently, the court relied on a plat upon which Harvey outlined his "residence" during Sarah's deposition on August 2, 1989. However, Harvey testified that the outline of his residence on the plat "was read as approximate. It is not accurate." Harvey stated that the outline was "the general area" of his residence. Additionally, this occurred more than two years after the execution of the contract and in preparation for trial. From this evidence, the court constructed a legal description of the life estate and included it in the judgment order. A clear or unambiguous description of the life estate was never placed in evidence.

Defining the life estate as "the residence which he occupies on the subject property" is insufficient. It is not clear from the face of the agreement if this estate includes any land around his home, the garage, any storage sheds, or only the home structure itself. This is similar to *McDaniel* in that it is not clear from the document what portion of the property is subject to the life estate. This confusion arises because the parties are trying to carve a life estate out of a larger tract of land without being specific as to the legal description of the life estate. In this case, it was necessary to look outside the document at extrinsic evidence to determine the bounds of the life estate. Such an analysis is not appropriate in an action for specific performance. Since the agreement contemplated a life estate to be reserved in Harvey and the life estate fails for lack of a sufficient description, it was error for the court to award specific performance in this case.

The judgment of the circuit court of Lake County is reversed.

Reversed.

UNVERZAGT, P.J., and DUNN, J., concur.