2022 IL App (1st) 220312-U

No. 1-22-0312

Second Division
December 20, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| BIO COMPRESSION SYSTEMS, INC., | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18 M1 126297 |
| CLINICAL WOUND SOLUTIONS, LLC, | ) ) ) | Honorable |
| Defendant-Appellant. | ) ) | Eileen M. O'Connor, Judge, presiding. |

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The trial court's judgment finding that plaintiff had met its burden of proof for an account stated is not against the manifest weight of the evidence. The trial court did not abuse its discretion in denying appellant's motion for reconsideration.

¶ 2     On July 27, 2018, plaintiff-appellee, Bio Compression Systems, Inc., filed a three-count complaint against defendant-appellant, Clinical Wound Solutions, LLC, in the Circuit Court of Cook County. Count I alleged a claim for an account stated. Count II alleged unjust enrichment.

Finally, count III of the complaint alleged a claim for *quantum meruit*. Plaintiff sought $12,000 in damages, plus pre-judgment interest. Defendant filed its answer and affirmative defenses on July 24, 2019. The case was continued for status not fewer than ten times, finally proceeding to a bench trial on September 22, 2021.[1]

¶ 3    Following trial, the court found that plaintiff had proved an account stated by a preponderance of the evidence. Having determined that plaintiff had an adequate remedy at law, the court additionally found that plaintiff failed to meet its burden of proof on its *quantum meruit* and unjust enrichment claims. Based on the evidence presented, the court entered judgment in favor of plaintiff in the amount of $12,000, and additionally awarded pre-judgment interest, pursuant to 815 ILCS 205/2 (West 2020) in the amount of $2,468.20, for a total judgment amount of $14,468.20.

¶ 4    On October 25, 2021, defendant filed a motion for reconsideration. On February 1, 2022, the motion was denied. On March 2, 2022, plaintiff timely filed this appeal. We have jurisdiction in the matter pursuant to Supreme Court Rule 303. Ill. S. Ct. R. 303 (eff. July 1, 2017). For the reasons that follow, we affirm the judgment of the circuit court.

¶ 5                                  I. BACKGROUND

¶ 6    The following summarizes the relevant testimony at trial.

¶ 7    Jon Ross, president of Bio Compression Systems, testified on behalf of plaintiff. According to Ross, Bio Compression Systems is a manufacturing company of medical devices, such as pneumatic compression devices for the treatment of lymphedema and chronic wounds. All of

---

[1] Pursuant to the Illinois Supreme Court's order and a Cook County administrative order, this trial was conducted via Zoom due to the COVID-19 pandemic. See *In re Illinois Courts Response to COVID-19 Emergency*, Ill. S. Ct., M.R. 30370 (eff. Mar. 17, 2020); Cook County Cir. Ct. Gen. Adm. Order 2020-07 (Mar. 23, 2021); see also Ill. S. Ct. R. 45, 241 (eff. May 22, 2020).

plaintiff's medical products are made in the company's facility in New Jersey. The company has been in business for 37 years, with its entire business built around quality manufacturing. Plaintiff sells to durable medical equipment suppliers throughout the country. Their products are then provided to patients with the diseases for which plaintiff's devices have been manufactured.

¶ 8     Ross testified that Clinical Wound Solutions started purchasing equipment from them many years ago. Ross met Eric Lane of Clinical Wound Solutions at a trade show, and they were a very good customers for many years.

¶ 9     Ross testified that an exhibit, which included a series of 12 individual invoices, ultimately admitted into evidence as a business record as exhibit A and over defendant's objection, was an accounts receivable recap generated by the finance department for plaintiff. The invoices, dated from February 2017 through August 2017, were the due dates for those invoices and totaled $12,000.[2] Ross testified that defendant was on "30-day terms" with plaintiff.

¶ 10     According to Ross, a demand for payment of the $12,000 was made to defendant. A response from Lane was to the effect that they could not pay at the time and that he did not know how he could help plaintiff, but "[h]e was trying." Ross further testified that he never received any objection from defendant regarding any of the items identified on the invoices and shipped to defendant. Additionally, Ross testified that he never heard from defendant that it did not receive any of the items identified on the 12 invoices.

---

[2] Following the court's ruling to admit the recap as exhibit A, defendant continued to object that there was no foundation for admission of the invoices. In response, the court directed, and plaintiff laid a foundation for each of the 12 invoices reflected on the recap individually.

¶ 11    Ross testified that exhibit B-3 showed payments made by defendant against other shipments in years prior to the nonpayment issue.[3] In response to defendant's relevancy objection, the court ruled the exhibit relevant to establish an ongoing relationship between the parties. Ross testified that the exhibit shows a receipt date and a payment date for equipment invoiced. The exhibit additionally showed a credit of $6,950 and a balance due and owing from defendant in the amount of $12,000.

¶ 12    Ross additionally testified that in August 2017, he sent an e-mail to Lane concerning a past due balance on the account as Lane was attempting to place more orders with the company. Ross reached out to say that plaintiff could no longer ship unless it received a payment because defendant's account was "so overdue." Ross further testified, over defendant's objection, that he sent additional e-mails in December 2017 "because the balance due of $12,000 still had not been paid after months of chasing the defendant, and so [he] continued to reach out by phone and by e-mail to try to receive the money that was due." After numerous months and attempts to collect, he turned over the account "to see if they could help recover our money."

¶ 13    Ross further testified that, in late 2017, he reached out to Lane. The responses he received from Lane's office were that management was not able to pay at the time, and "he didn't know how he could help." After December 2017, the case was turned over to plaintiff's collection agency. The $12,000 was not paid.

¶ 14    Prior to cross-examination, plaintiff's counsel indicated to the court that Ross would be its only witness. On cross-examination, Ross testified that he had on occasion taken an order or two

---

[3] An attempt to admit a document purportedly reflecting tracking numbers associated with invoices and the 12 shipments made from plaintiff's facility (exhibit B-2) was denied as the document was not prepared by plaintiff, but instead by UPS.

in the past, but not in the normal course of the business day. He further testified that the invoices did not reflect that the shipments had been either received or accepted by defendant and that plaintiff did not track whether goods were actually received. He further testified that, while he was attempting to collect on the balance due from defendant, he sent accounts receivable recaps to them asking for plaintiff's funds. He acknowledged that he had nothing to show that those recaps had actually been received by defendant.

¶ 15    On redirect examination, Ross reiterated that for the 12 invoices admitted into evidence, plaintiff never received "one complaint" that the goods were not received. In a December 28, 2017 e-mail, Ross made a demand for payment.

¶ 16    Following brief re-cross examination and further redirect examination, plaintiff rested, and trial was continued to September 24. Upon commencement of trial, defendant orally moved for a directed finding. Following argument by the parties, the motion was denied. Defendant subsequently advised the court that it was "just relying on the testimony of Mr. Ross" and "documentation in evidence that was and was not admitted at the time of trial." With that, defendant rested.

¶ 17    Following a brief recess, the court entered a verdict in favor of plaintiff on count I. The court commented that, under an account stated, the plaintiff is required to prove by a preponderance of the evidence that there was an agreement between the parties who had previous transactions, that the account representing the transactions was true, so that the balance was correct, together with a promise, which may be express or by implication, for payment of the balance. After recounting the testimony, the court stated that it found Ross credible and that plaintiff had met its burden of proof on count I for account stated. With respect to count II (unjust enrichment) and count III (*quantum meruit*), the court found that as plaintiffs have an "available

remedy at law," it failed to meet its burden of proof. The court awarded plaintiff damages in the amount of $12,000 plus pre-judgment interest in the amount of $2,468.20 for a total award of $14,468.20.

¶ 18    On October 25, 2021, defendant filed a motion for reconsideration. In its motion, defendant argued that plaintiff failed to prove and establish evidence to satisfy all of the elements of an account stated. Defendant additionally argued that the court's ruling in allowing the invoices to be admitted at trial was error. Defendant argued that the invoices, "though it may be admissible as business records, should not have been admitted because the content of the invoices should not have been deemed admitted, as there was a hearsay within hearsay." In response, plaintiff noted that defendant introduced no evidence at trial and that the elements for an account stated had been proven by a preponderance of the evidence.

¶ 19    At the close of argument, the court again recounted the evidence at trial. The court expressly rejected defendant's characterization of the invoices as hearsay within hearsay, noting the characterization as an incorrect interpretation of the law. The court denied defendant's motion for reconsideration and noting the lack of necessity for final and appealable language in the order, nonetheless, agreed to include it in the final order.

¶ 20    This appeal followed.

¶ 21                                    II. ANALYSIS

¶ 22    Defendant contends that the trial court erred in entering judgment in favor of plaintiff as the plaintiff failed to meet its burden of proof for an account stated. Defendant additionally urges error in the trial court's denial of its motion for reconsideration. Before proceeding, we set forth the applicable standard of review.

¶ 23    In a bench trial, the standard of review is whether the judgment is against the manifest weight of the evidence. *People ex rel Illinois Department of Labor v. 2000 W. Madison Liquor Corp.*, 394 Ill. App. 3d 813, 817 (2009). "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Judgment Services Corp., v. Sullivan*, 321 Ill App. 3d 151, 154 (2001). As the trier of fact, the trial judge is in the best position to judge the credibility of the witnesses and determine the weight to be given to their testimony. *Buckner v. Carsey*, 311 Ill. App. 3d 139, 144 (1999). "A court of review will not substitute its judgment for that of the trial court unless the judgment is against the manifest weight of the evidence." *People ex rel. Illinois Department of Labor*, 394 Ill. App. 3d at 817.

¶ 24    Defendant asserts that plaintiff failed to prove the necessary elements to support its claim for an account stated through either the testimony presented or the invoices admitted into evidence. With respect to the invoices, defendant argues that they could not be used to prove the correctness of the documents' content. It is defendant's contention that the invoices were "only the plaintiff's self-serving documents" which do not prove that the accounts were true, that the balance was correct, that there was mutual assent between the parties, or that there was a meeting of the minds. Defendant maintains that the invoices, admitted as business records, "can only be used as a recording of the witness' business."

¶ 25    We begin our analysis with observation of the most apparent flaw in defendant's challenge to the judgment, that being the complete absence of any legal authority or analysis to support its argument. Although defendant cites to caselaw, it does so only for the purpose of identifying the source of the elements for an account stated. Then, without any legal basis or analysis, defendant proceeds to state that plaintiff failed to satisfy the element cited. There is absolutely no other

authority cited or any analysis provided to support defendant's particular claims; only bare assertions that plaintiff failed to satisfy the requisite elements for an account stated.

¶ 26    Supreme Court Rule 341 requires substantially more. It is neither appropriate nor sufficient under the rule to simply assert a series of claims without any attempt to support them with sound legal analysis or citation to authority. "Mere contentions *** are not enough. *People ex rel. Madigan v. Lincoln, Ltd.*, 383 Ill. App. 3d 198, 208 (2008). The rule requires an appellant's opening brief to contain contentions, reasoning, and citation to supporting authority and pages of the record. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 27    The appellate court is "not a depository in which the burden of argument and research may be dumped" (*Campbell v Wagner*, 303 Ill. App. 3d 609, 613 (1999)), and we are under no obligation to undertake an appellant's duty of research and analysis (*Obert v. Saville*, 253 Ill. App. 3d 677, 6982 (1993)). "When the procedural violations interfere with our review of the issue, we may exercise our discretion and strike a brief for failure to comply with the rules." *Wing v. Chicago Transit Authority*, 2016 IL App (1st) 153517, ¶ 11; *In re Marriage of Ash & Matschke*, 2021 IL App (1st) 200901, ¶ 32 ("[W]here an appellant's brief contains Rule 341 violations that impede our review of the case at hand, we may strike that brief and dismiss the appeal."). Alternatively, where arguments do not comply with Rule 341, they do not merit consideration on appeal and may be rejected by this court for that reason alone. *Housing Authority of Champaign County v. Lyles*, 395 Ill. App. 3d 1036, 1040 (2009). Simply put, an appellant forfeits issues that are not well defined and insufficiently presented. *Gandy v. Kimbrough*, 406 Ill. App. 3d 867, 875 (2010).

¶ 28    Forfeiture aside, we find no merit in defendant's "arguments." Here, defendant, although half-heartedly, makes no claim that the invoices failed to qualify as business records. Indeed, we note that under Supreme Court Rule 236, which codifies the business records exception to the

hearsay rule, "[a]ny writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business ***[.]" Ill. S. Ct. R. 236(a) (eff. Aug. 1, 1992). Furthermore, a record can be admissible even if it was prepared by a third party. *Solis v. BASF Corp.*, 2012 IL App (1st) 110875, ¶ 86. Commonly referred to as the business records exception, the rule is premised on acceptance of the fact that routine records on which businesses rely are likely to be accurate (*Southern Wine and Spirits of Illinois, Inc. v. Steiner*, 2014 IL App (1st) 123435, ¶ 25) because businesses have a financial incentive to be accurate (*People v. Coleman*, 2014 IL App (5th) 110274, ¶ 150).

¶ 29    Defendant, instead, devotes the lion share of its argument to what might be regarded in the criminal law context as a sufficiency of the evidence claim. In this regard, defendant makes broad claims as to why the testimony or the invoices are insufficient to satisfy the elements for an account stated.

¶ 30    "[A]n account stated is merely a form of proving damages for breach of a promise to pay a contract." *Dreyer Medical Clinic, S.C. v. Corral*, 227 Ill. App. 3d 221, 226 (1992). "It is an agreement between parties who previously engaged in transactions that the account representing those transactions is true and the balance stated is correct, together with a promise of payment of the balance." *Id.* "An account stated must demonstrate the mutual assent of both creditor and debtor." *Toth v. Mansell*, 207 Ill. App. 3d 665, 671 (1990). The meeting of the minds as to the accuracy of an account often occurs where one party renders a statement of account to which the other party acquiesces. *Id.* "The manner of acquiescence is not critical, and the meeting of the minds may be inferred from the parties' conduct and the circumstances of the case." *Id.* When one party renders a statement of account to another who retains it without objection for longer than is

reasonable, an account stated is established. *Protestant Hospital Builders Club, Inc., v. Goedde*, 98 Ill. App. 3d 1028, 1032 (1981). If a party is unable to provide prima facie proof of an agreement, it is precluded from receiving against an opposing party by claiming an account stated. *D.S.A. Finance Corp v. County of Cook*, 345 Ill. App. 3d 554, 560 (2003). Whether an account stated exists is a question of fact. *Dreyer Medical Clinic*, 227 Ill. App. 3d at 226.

¶ 31    Ross testified at trial regarding the history of doing business with defendant, the invoices, reflecting both past and the most current invoices issued to defendant for payment, attempts to collect on the past due invoices, as well as the individual amounts due and owing for each kind of equipment provided. It was his further testimony that defendant made no complaint regarding any of the invoices. Further, according to Ross, Lane actually acknowledged owing the debt, but indicated that he did not know how he could help.

¶ 32    The trial court found Ross's testimony to be credible and the invoices, once admitted, to be reliable evidence of the business relationship, that equipment had been shipped and received, the record of amounts paid in the past, as well the amounts due and owing, to be true and accurate. Other than its oral challenge, defendant presented absolutely no evidence to refute any aspect of Ross's testimony, or the accuracy of the invoices admitted as business records. On this record, we have no basis upon which to conclude that the court's judgment was against the manifest of the evidence.

¶ 33    Nevertheless, defendant persists in its claims of error, asserting that "the invoices should have been excluded pursuant to Illinois Rule of Evidence 805 as being hearsay within hearsay." It contends that the content of the invoices contains "another level of hearsay." Then, merely extracting language from *People v. McCullough*, 2015 IL App (2d) 121364, ¶ 110, defendant states that "each layer of hearsay must be excused by its own exception as adopted in the Seventh Circuit

in *United States v Hajda*, 135 F.3d 430, 444 (7th Cir. 1998)[.]" He maintains that because the content of the invoices is hearsay, unless such content falls within an exception to the rule against hearsay, that content cannot be used to show that the goods were ordered, shipped, received, and accepted.

¶ 34    Defendant's double hearsay argument fares no better here than it did in the trial court. "When a business record contains hearsay statements within the record, [those] *** must also be admissible under an exception to the hearsay rule." *Holland v. Schwan's Home Service, Inc.*, 2013 IL App (5th) 110560, ¶ 184. Defendant does not identify what "layer" of the invoices here constitutes double hearsay. The invoices, testified to by Ross, contained billing information entered by an employee in plaintiff's finance department. It is the business record itself, not the testimony of a witness, in this case Ross, who makes reference to it, that is admissible. *Troyan v. Reyes*, 367 Ill. App. 3d 729, 733 (2006). Because we find no violation of the hearsay rule by the court's admission of the invoices, defendant's double hearsay argument fails.

¶ 35    Defendant next contends that the trial court erred in denying its motion for reconsideration. Defendant offers two separate bases in support of its challenge to the court's ruling. It first argues that because plaintiff failed to meet its burden of proof, the court erred in denying the motion for reconsideration. As we have already determined that the court's judgment was not against the manifest weight of the evidence, we decline to further consider defendant's failed burden of proof claim.

¶ 36    Defendant's second argument is that because the "[s]tatute of [f]rauds defeats the plaintiff's cause of action," the court's judgment and subsequent denial of the motion for reconsideration was in error. Citing section 5/2-201(1) of the Uniform Commercial Code, defendant asserts that because there was no writing signed by the party to be charged, the contract was not enforceable.

See 810 ILCS 5/2-201(1) (West 2020). Plaintiff responds that application of the statute of frauds defense is waived as defendant failed to plead it in its answer to the complaint. In its reply brief, defendant argues that it raised the argument that "the exception to the writing requirement of the statute of frauds did not apply at trial and in its Motion for Reconsideration." Further, defendant maintains, without citation to authority, that it was raised as a statute of which the court was obligated to take judicial notice. Defendant additionally asserts that by responding to the statute of frauds argument in the motion for reconsideration, plaintiff waived any objection.

¶ 37    As defendant correctly notes, the purpose of a motion for reconsideration is to alert the court to (1) newly discovered evidence, not available at the time of trial, (2) changes in the law or (3) errors in the court's previous application of existing law. *River Plaza Homeowner's Ass'n v. Healy*, 389 Ill. App. 3d 268, 280 (2009). We believe it to be a settled principle that arguments raised for the first time in a motion for reconsideration in the trial court are forfeited on appeal. *Evanston Ins. Co., v. Riseborough*, 2014 IL 114271, ¶ 36; *Holzer v. Motorola Lighting Inc.*, 295 Ill. App. 3d 963, 978 (1998) (A party "may not raise a legal theory for the first time in a motion to reconsider."). "Orders denying a motion for reconsideration are reviewed for an abuse of discretion." *RBS Citizens Nat. Ass'n v. RTG-Oak Lawn, LLC.*, 407 Ill. App. 3d 183, 193 (2011).

¶ 38    The statute of frauds is an affirmative defense which, if established, renders a contract voidable. *Goldwater v. Greenberg*, 2017 IL App (1st) 163003, ¶ 10. Consequently, the contract may be enforced, unless the defendant raises the statute of frauds as a defense. *Id.* "The defense that the contract upon which litigation is based is void under the [s]tatute of [f]rauds must be specially pleaded and cannot be raised for the first time on appeal." *Thomas v. Pope*, 380 Ill. 206, 209-10 (1942). Where a defendant fails to specially plead the defense, he is deemed to have waived

it and it cannot be considered, even if the evidence suggests the existence of the defense. *Harvey v. McKinney*, 221 Ill. App. 3d 140, 142 (1991).

¶ 39     Our review of the record reveals that the statute of frauds was not specially pled. In his verified answer, under the section designated as "Affirmative Defenses," defendant asserts (1) that plaintiff is barred from proceeding as no definite material terms were contained in the complaint, and (2) that plaintiff failed to state any cause of action upon which relief could be granted. No mention of the statute of frauds appears in defendant's answer, in either the section designated as "Affirmative Defenses" or in its general denial of counts I, II, and III.

¶ 40     We note further that during the court's oral pronouncement of the judgment, and in response to defendant's inquiry regarding application of the statute of frauds, the court responded that it did not address it because the statute had not been pled and was, therefore, not before the court. We acknowledge that in its response to defendant's motion for reconsideration, plaintiff argued that the statute of frauds did not stand as a bar to recovery. Even so, the failure to specially plead the statute of frauds as an affirmative defense forfeits the issue on appeal and we decline further consideration of the matter. Moreover, there is nothing to suggest that the trial court, having declined earlier consideration, had altered its position post-judgment, notwithstanding plaintiff's response.

¶ 41     That said, we find that the court did not abuse its discretion in denying defendant's motion for reconsideration.

¶ 42                                        III. CONCLUSION

¶ 43     For the reasons stated, we affirm the judgment of the circuit court.

¶ 44     Affirmed.