THE PEOPLE *ex rel.* THE DEPARTMENT OF LABOR, Plaintiff-Appellee, v. 2000 W. MADISON LIQUOR CORPORATION, an Illinois Corporation, d/b/a Main Street Liquors, Defendant-Appellant.

First District (2nd Division)   No. 1—08—0902

Opinion filed September 29, 2009.

Saul R. Wexler, of Chicago, for appellant.

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Laura Wunder, Assistant Attorney General, of counsel), for appellee.

JUSTICE KARNEZIS delivered the opinion of the court:

Following a bench trial, defendant Main Street Liquors was found to be in violation of the Equal Pay Act of 2003 (the Act) (820 ILCS 112/1 *et seq.* (West 2006)) for paying a female employee, Mary Arrington, less than a male employee for substantially similar work. Main Street Liquors was ordered to pay Arrington $4,061.25 in back wages. Main Street Liquors now appeals and argues that the trial court's judgment was against the manifest weight of the evidence and that Arrington failed to establish her claims by a reasonable inference. For the foregoing reasons, we affirm.

## BACKGROUND

Mary Arrington was employed by Main Street Liquors, a convenience store that sold liquor, groceries, tobacco and lottery tickets, from June 2003 to May 2004, when she quit. Arrington filed a complaint with the Illinois Department of Labor (IDOL) alleging that Main Street Liquors had violated the Act because she was paid less than male employees for substantially similar work. Specifically, Arrington stated that she "wasn't paid the same amount as the other men were, I am an experienced lottery person."

Following an investigation, compliance officer Ron Ward of the IDOL concluded that Arrington's employer, Andreas Yiannaris, Main Street Liquor's owner, had paid Arrington less than a male employee, Harper Yannoulis, for substantially similar work. Ward estimated that Arrington was owed $4,061.25 in back wages, but that the employer's missing and inadequate records made it difficult to determine the exact amount owed.

After the investigation, an administrative hearing was held. An administrative law judge also found that Main Street Liquors had violated the Act. The IDOL issued a determination that Main Street Liquors owed Arrington $4,061.25 in back wages and that payment was to be made in 15 days.

Main Street Liquors did not comply with IDOL's payment demand. On December 7, 2005, the Illinois Attorney General, acting on behalf of IDOL, filed suit against Main Street Liquors for a violation of the Act. A trial was held on January 17, 2008.

Ron Ward testified that he is a compliance officer for the IDOL. Upon receiving Arrington's complaint, Ward contacted Arrington on October 5, 2004. Arrington told Ward that she worked approximately 35 to 36 hours per week at Main Street Liquors and was paid half in cash and half by check. She also told Ward that her duties included operating the cash register, operating the lottery machine and stocking and cleaning shelves.

Ward also met with Andreas Yiannaris, the owner of Main Street Liquors. At that meeting, Yiannaris provided Ward with payroll records and a summary sheet that had the rates of pay for the different employees of Main Street Liquor. Ward stated that Yiannaris did not keep proper time or payroll records. However, the summary sheet Yiannaris provided showed that manager George Dheftos was paid $9 per hour, C.C. Ferguson, the "cleanup person," was paid $5.50 per hour and Walter Barnes, Harper Yannoulis and Arrington were paid $7.25 per hour. Yiannaris told Ward that Arrington was hired to operate the lottery machine. He also told Ward that Barnes, Yannoulis and Arrington were clerks and were responsible for checking people out, operating the lottery machine, and cleaning and stocking shelves. Yiannaris told Officer Ward that his employees did not work more than 40 hours a week. In addition, Yiannaris told him that he did not keep records of the amount of time each employee worked per week. Rather, the employees would keep track of the amount of hours they worked per week. There were also no records of cash payments made to the employees.

Ward began an audit of the records supplied by Yiannaris and concluded that the payroll records were inaccurate and incomplete. Ward took the gross amount that the employees were paid and divided it by their stated hourly wage. He found that the hours worked came out to one-hundredth of an hour. Ward stated that employees who did not punch a time clock would not normally report their hours worked to the hundredth of an hour. He stated that employees generally report their hours in quarters. Ward asked Yiannaris about this irregularity. Yiannaris told him that Arrington "hardly ever came to work anyway."

Ward compared Arrington's gross pay with Yannoulis' gross pay because they worked for Main Street Liquors for approximately the same time and performed essentially the same duties. Ward found that, assuming that Arrington and Yannoulis worked the same amount of hours, Arrington was paid substantially less than Yannoulis. Ward found that this constituted a violation of the Act. Because of the poor payroll records, Officer Ward had to estimate the amount in back pay owed to Arrington. He estimated that amount to be $4,061.25.

In estimating the amount owed to Arrington, Ward used "reasonable inferences." Ward estimated that Arrington and Yannoulis worked the same number of weekly hours. Ward then calculated, using payroll records, the average monthly gross totals paid to Arrington and Yannoulis. Because the payroll records did not account for cash payments, Ward doubled the gross amounts received by check to come up with the average monthly gross totals. He then divided the average monthly gross totals for January 2004 by four and yielded a weekly total for Yannoulis of $375, and a weekly total for Arrington of $117.50. He adjusted his calculations in April to reflect that the hours worked by both employees had been cut back. After adding the difference between the weekly payments to Yannoulis and Arrington, Ward concluded that the amount owed Arrington was $4,061.25. This amount represented wages owed from the Act's effective date of January 1, 2004, through May 2004, when Arrington quit her job.

Arrington also testified at trial. She previously worked for Main Street Liquors from March 1995 to October 1998. Arrington quit and then went back to work at Main Street Liquors on June 1, 2003, and worked there until June 2004. During her second stint of employment at Main Street Liquors, she was a lottery operator and worked 36 hours per week. Her duties were to operate the lottery machine and the cash register and to clean up the bottles and sweep the floor. Yiannaris told her to sell "whiskey and groceries." Arrington kept track of her hours and reported them to Yiannaris. She was paid $7 per hour and was paid weekly, alternating between checks and cash.

Arrington also stated that she played the lottery and when she did not have any money for the lottery tickets, she left a slip in the cash register drawer with her name on it and how much she owed. That amount would be deducted from her paycheck.

Arrington testified that Yannoulis was not her supervisor, that she did not report to him and that he did not assign her work. Yannoulis had the same duties as Arrington. George Dheftos was responsible for closing the store, not Yannoulis. In April 2004, Arrington's hours and pay were cut. It was shortly after that Arrington quit her job.

On cross-examination, Arrington admitted that at her deposition, she stated that she quit Main Street Liquors in June 2004 because the store had been robbed. Arrington also admitted that on the complaint form she listed her primary duties as a lottery operator. She never indicated on the form that she was a clerk or that she worked the cash register. She also stated that when she first started working at Main Street Liquors in 2003 she earned $6.25 an hour, but her pay went up to $7 per hour. She testified that she did not remember stating at her deposition that she did not receive a raise. In addition, she explained a portion of her deposition testimony where she stated that she was paid weekly checks. Arrington explained that "[i]t was checks until a period. Then it went to checks, cash, checks, cash."

Andreas Yiannaris testified that during her second period of employment at Main Street Liquors, Arrington was hired to operate the lottery machine. Yiannaris never asked Arrington to do anything other than operate the lottery machine. Arrington worked "24 hours, 32 hours" a week from 3 to 7 p.m. Arrington received a raise on June 1 and Yiannaris denied paying her in cash.

Yannoulis was a clerk but was a manager "once a week" and closed the store when George Dheftos was on vacation. Yannoulis had keys and the alarm code.

After hearing all of the evidence, the trial court found in favor of IDOL, stating:

"I did consider Mr. Ward's testimony. Although I did not take his typed notes, I did consider the testimony that he gave. The fact is if the employer doesn't provide records, then it would be difficult in any situation for the Department of Labor to review records if the employer decided never to keep records. So there is a reasonable inference that can be made from the circumstances and investigation."

The trial court ordered Main Street Liquors to pay $4,061.25 in unpaid wages, $8,122.50 in penalties under section 35(a) of the Act and a $500 discretionary penalty under section 30(c) of the Act. The total judgment entered against Main Street Liquors was $12,683.75. It is from this judgment that Main Street Liquors now appeals.

## ANALYSIS

The standard of review in a bench trial is whether the judgment is against the manifest weight of the evidence. *Dargis v. Paradise Park, Inc.*, 354 Ill. App. 3d 171, 177 (2004). A court of review will not substitute its judgment for that of the trial court unless the judgment is against the manifest weight of the evidence. *First Baptist Church v. Toll Highway Authority*, 301 Ill. App. 3d 533, 542 (1998). "A judgment is against the manifest weight of the evidence only when the opposite

conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Judgment Services Corp. v. Sullivan*, 321 Ill. App. 3d 151, 154 (2001).

As the trier of fact, the trial judge is in the best position to judge the credibility of the witnesses and determine the weight to be given to their testimony. *Buckner v. Causey*, 311 Ill. App. 3d 139, 144 (1999). When contradictory testimony that could support conflicting conclusions is given at a bench trial, an appellate court will not disturb the trial court's factual findings based on that testimony unless a contrary finding is clearly apparent. *Buckner*, 311 Ill. App. 3d at 144.

■ The Equal Pay Act of 2003 took effect on January 1, 2004, and prohibits gender-based differences in pay:

> "(a) No employer may discriminate between employees on the basis of sex by paying wages to an employee at a rate less than the rate at which the employer pays wages to another employee of the opposite sex for the same or substantially similar work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where the payment is made under:
>
> (1) a seniority system;
>
> (2) a merit system;
>
> (3) a system that measures earnings by quantity or quality of production; or
>
> (4) a differential based on any other factor other than: (i) sex or (ii) a factor that would constitute unlawful discrimination under the Illinois Human Rights Act." 820 ILCS 112/10 (West 2006).

The Act also requires an "employer subject to any provision of this Act shall make and preserve records that document the name, address, and occupation of each employee, [and] the wages paid to each employee." 820 ILCS 112/20 (West 2006).

■ It is uncontested in this case that Yiannaris failed to keep adequate records regarding the amount of hours his employees worked and the wages paid to each employee. It is also uncontested that because adequate records are lacking, the "reasonable inference" standard applies in this case. The "reasonable inference" standard has been applied by the United States Supreme Court in cases where employees have sought unpaid wages or unpaid overtime compensation under the Fair Labor Standards Act of 1938 (FLSA) (29 U.S.C. §216(b) (2006)) and where the employers have failed to maintain adequate records. Given that there is no Illinois case law that deals with the Act at issue here, or an employer's failure to maintain adequate records under the Act, we find no reason why the FLSA

"reasonable inference" standard would not be equally applicable to similar claims under this Act.

In *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 90 L. Ed. 1515, 1523, 66 S. Ct. 1187, 1192 (1946), the Court held that an employee should not be penalized for his employer's failure to keep adequate records relating to the employee's FLSA claim "by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." Instead, the employee has met his burden if he proves that he has performed work for which he was not properly compensated and "if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687, 90 L. Ed. at 1523, 66 S. Ct. at 1192. The burden then shifts to the employer to produce evidence of the exact amount of work performed or to produce evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. *Anderson*, 328 U.S. at 687, 90 L. Ed. at 1523, 66 S. Ct. at 1192.

Main Street Liquors argues that Arrington was required to prove by a preponderance of the evidence: (1) her duties and responsibilities as an employee of defendant; and (2) that she and Yannoulis were similarly situated employees. Main Street Liquors contends that Arrington failed to prove these required elements by a preponderance of the evidence. Instead, because Main Street Liquors' records were inadequate, the trial court only required Arrington to provide enough evidence throughout the entire case to create a reasonable inference, after which the burden shifted to Main Street Liquors to disprove the claim.

■ We disagree. Arrington's duties at Main Street Liquors were proven by a preponderance of the evidence. Although on Arrington's initial complaint to IDOL she listed her primary duty as a lottery machine operator and described only her lottery related duties, Arrington testified that her duties were to operate the lottery machine and the cash register. She also cleaned up the store. Arrington testified that Yiannaris knew that she was doing things in the store other than operating the lottery machine. Ward testified that when he interviewed Arrington, she told him that her duties included operating the cash register, operating the lottery machine and stocking and cleaning shelves. Furthermore, Ward testified that when he interviewed Yiannaris, Yiannaris told him that Yannoulis and Arrington were responsible for checking people out, operating the lottery machine, and cleaning and stocking shelves.

In addition, IDOL established by a preponderance of the evidence that Arrington and Yannoulis were similarly situated employees. Ar-

rington testified that she and Yannoulis had the same duties at the store. Ward testified that Yiannaris told him that Yannoulis and Arrington were clerks and had the same responsibilities at the store, including operating the lottery machine. There was some dispute over whether Yannoulis was a "part-time manager" because he closed the store once a week. Arrington testified that when she worked until closing, someone else would close the store. In addition, as previously indicated, Yiannaris previously described Yannoulis as a clerk, and acknowledged that he did the work of a clerk. Despite these slight differences, the Act does not require identical duties, just similar duties, which were clearly established. 820 ILCS 112/10(a) (West 2006).

The trial judge, as the trier of fact, was in the best position to judge the credibility of the witnesses and determine the weight to be given to their testimony. *Buckner v. Causey*, 311 Ill. App. 3d 139, 144 (1999). We cannot say that the trial court's finding was against the manifest weight of the evidence.

■ Main Street Liquors next claims that Arrington has failed to establish by reasonable inference the rate of her pay, the amount of hours she worked and the amount of wages paid to her. Main Street Liquors contends that similar to *Gilbert v. Old Ben Coal Corp.*, 85 Ill. App. 3d 488 (1980), Arrington has failed to provide a reasonable and creditable estimate of her hourly pay, her hours worked and the wages she received to shift the burden to Main Street Liquors to negate the reasonableness of the inference.

In *Gilbert*, the plaintiffs brought an action against their employer alleging a violation of the maximum hour and overtime pay provisions of the FLSA. The court found that the plaintiffs, who were mine workers, could not accurately estimate the amount of hours they worked per week. Therefore, their evidence was insufficient to be received as reasonable and creditable estimates. The *Gilbert* court noted that in other cases, particularly in *Brennan v. Parnham*, 366 F. Supp. 1014, 1025 (W.D. Pa. 1973) and *Brennan v. Carl Roessler, Inc.*, 361 F. Supp. 229 (D.C. Conn. 1973), courts have found that an employee may satisfy his burden of proof if he provides information "such as the reasonable and creditable estimates of the employees themselves." *Gilbert*, 85 Ill. App. 3d at 494-95. The court noted that in both *Parham* and *Roessler*, the employees' estimates were supplemented by an investigation by the Labor Department. Nevertheless, the *Gilbert* court found that, given the facts of the case, "[m]ere estimates of hours of work performed, without more, are not, one may infer, 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.' " *Gilbert*, 85 Ill. App. 3d at 495, quoting *Anderson*, 328 U.S. at 687-88, 90 L. Ed. at 1523, 66 S. Ct. at 1192.

In this case, Arrington testified about her hourly rate of pay. She testified that during the relevant time period she was paid $7 per hour. Yiannaris testified that she was given a raise in June. Ward testified that Yiannaris gave him a summary sheet that showed that Arrington and Yannoulis were paid the same $7.25 per hour.

Arrington testified that she worked 36 hours per week. Ward also testified that Arrington told him that she worked 36 hours per week. Yiannaris could not state the exact number of hours per week that Arrington worked. He said "24 hours, 32 hours," later said 20 hours per week and again changed to about 24 hours, but no more than 30 hours.

In addition, Ward provided his best estimate of the amount of wages owed Arrington. Ward estimated that Arrington and Yannoulis worked the same number of weekly hours and calculated the average monthly gross totals paid to Arrington and Yannoulis. Because the payroll records did not account for cash payments that Yiannaris told Ward he made to his employees, Ward doubled the gross amounts received by check to come up with the average monthly gross totals. He then divided the average monthly gross totals for January 2004 by four and yielded a weekly total for Yannoulis of $375 and a weekly total for Arrington of $117.50. Although he did not account for the deductions in Arrington's paycheck due to the money she owed from playing the lottery, he adjusted his calculations in April to reflect that the hours worked by both employees had been cut back. After adding the difference between the weekly payments to Yannoulis and Arrington, Ward concluded that the amount owed Arrington was $4,061.25. This amount represented wages owed from the Act's effective date of January 1, 2004.

Unlike *Gilbert*, the evidence supplied by Arrington, which was supplemented by Ward's testimony, was a reasonable and creditable estimate of her hourly pay rate, the amount of hours she worked per week and the amount of wages paid to her. Arrington established by credible evidence the amount and extent of work performed as a matter of just and reasonable inference. Yiannaris failed to provide sufficient evidence to negate the inference. Accordingly, the trial court's finding was not against the manifest weight of the evidence.

Based on the foregoing, the judgment of the trial court is affirmed.

Affirmed.

HOFFMAN and THEIS, JJ., concur.[1]

---

[1]Justice South concurred in the original decision prior to her retirement. Justice Theis was designated as the third panel member and reviewed the case before concurring in the opinion.