# Illinois Official Reports

## Appellate Court

***Green v. Papa*, 2014 IL App (5th) 130029**

| | |
|---|---|
| Appellate Court Caption | DARLENE GREEN, f/k/a Darlene Riskovsky, Plaintiff-Appellant, v. JOHN T. PAPA and CALLIS, PAPA, HALE, SZEWCZYK AND DANZINGER, P.C., Defendants-Appellees. |
| District & No. | Fifth District<br>Docket No. 5-13-0029 |
| Filed | February 5, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a legal malpractice action arising from defendants' representation of plaintiff in the Court of Claims with respect to an accident in which plaintiff's car was struck by a Department of Transportation truck, the trial court's judgment for defendants was affirmed, since the basis of the malpractice claim was that defendants' negligence led the Court of Claims to exclude certain medical evidence, which in turn caused the Court of Claims to conclude that a later fall was the primary cause of plaintiff's injuries; however, the decision of the Court of Claims to exclude the evidence was a result of the court's erroneous conclusions of facts and law, not her counsel's malpractice. |
| Decision Under Review | Appeal from the Circuit Court of St. Clair County, No. 08-L-178; the Hon. Vincent J. Lopinot, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Patricia A. Zimmer, of Ripplinger & Zimmer, LLC, of Belleville, for appellant.<br><br>Daniel F. Konicek and Michael J. Corsi, both of Konicek & Dillon, P.C., of Geneva, for appellees. |

JUSTICE SPOMER delivered the judgment of the court, with opinion.
Justice Stewart concurred in the judgment and opinion.
Justice Cates specially concurred, with opinion.

**OPINION**

¶ 1    The plaintiff, Darlene Green, formerly known as Darlene Riskovsky, appeals from the December 20, 2012, order of the circuit court of St. Clair County, which entered a judgment in favor of the defendants, John T. Papa and Callis, Papa, Hale, Szewczyk, & Danzinger, P.C. (Papa), on Darlene's complaint for legal malpractice. On appeal, Darlene argues that the circuit court erred in finding that Papa did not breach his duty to Darlene, and assuming there had been a breach of duty, it was not the proximate cause of Darlene's damages. For the reasons that follow, we affirm.

¶ 2    As an initial matter, Darlene filed a motion to strike section I from Papa's brief because Papa cited to an unpublished order of this court when making his statement of the standard of review. We took Darlene's motion with the case. Upon consideration, we grant Darlene's motion in part. We find that the first paragraph of section I does cite to an unpublished order of this court, and as such is in violation of Illinois Supreme Court Rule 23(e) (eff. July 1, 2011). Accordingly, we grant Darlene's motion to strike that paragraph. However, because, in the second paragraph of section I, Papa does not cite to an unpublished order, but instead addresses the case cited by Darlene in the statement of the standard of review contained in her brief, the motion to strike is denied as to that paragraph. As to the third paragraph, we also find the motion to strike well-taken, because it provides a statement of the standard of review as advocated in the first paragraph and provides no additional citation to authority beyond the unpublished order. In conclusion, Darlene's motion to strike is granted as to paragraphs 1 and 3 of section I of Papa's brief, but is denied as to paragraph 2.

¶ 3                                    FACTS

¶ 4    On April 18, 2008, Darlene filed a complaint in the circuit court of St. Clair County, alleging a cause of action for legal malpractice against Papa. According to the complaint, Darlene was involved in a motor vehicle accident on April 28, 1998, in which the car she was driving was hit by a dump truck owned by the Illinois Department of Transportation (IDOT) and driven by one of its employees. On April 29, 1998, Darlene entered into a contract with Papa for legal representation to recover for damages she sustained as a result of the accident. On February 8, 1999, Papa filed a claim on Darlene's behalf in the Court of Claims against IDOT. On March 18, 2004, Papa represented Darlene in a hearing before the Court of Claims on Darlene's claim. On March 28, 2006, the Court of Claims issued an opinion, in which it excluded from evidence the deposition testimony of one of Darlene's treating providers, Dr. Schoedinger, finding that the deposition was a discovery deposition under Illinois Supreme

Court rules. In the opinion, the Court of Claims awarded Darlene $17,000 for her injuries and property damage, finding that IDOT was not responsible for treatment Darlene received after October 5, 1998. On April 12, 2006, Papa filed a petition for rehearing, which, according to the complaint, was denied on March 7, 2007. However, we note that no order denying the petition for rehearing appears in the record received by this court in the instant appeal.

¶ 5　According to Darlene's complaint, Papa breached his duty to her by failing to properly serve a notice of evidence deposition for Dr. Schoedinger, Darlene's treating orthopedic surgeon. The complaint also accuses Papa of breaching his duty by failing to present evidence that the treatment she received by Dr. Schoedinger was proximately caused by the April 1998 accident and failing to present evidence that a subsequent event on October 5, 1998, further detailed below, was not a proximate cause of her injuries and treatment. A bench trial was held before the circuit court on Darlene's legal malpractice claim on October 15, 2012, wherein the following evidence relevant to this appeal was adduced.

¶ 6　The entire record of the March 18, 2004, proceedings before the Court of Claims was admitted into evidence, but, as stated above, the order denying Papa's petition for rehearing is missing. Assistant Attorney General Melissa Ellison, representing IDOT, made an objection to the submission of Dr. Schoedinger's deposition testimony into evidence, taking the position that it was a discovery deposition, rather than an evidence deposition. In making this argument, attorney Ellison relied on the fact that the cover of the deposition transcript designated the deposition as a discovery deposition and that the notice of deposition failed to designate the deposition as an evidence deposition in accordance with Illinois Supreme Court Rule 202 (eff. Jan. 1, 1996). In response, Papa informed the Court of Claims that he had an agreement with a prior attorney for the Attorney General, Jason Boltz, that all of the depositions of Darlene's treating providers were to be taken for purposes of evidence and that although the notice of the other two depositions of Darlene's treating providers, Dr. Lin and Dr. King, contained the exact same language as the notice for Dr. Schoedinger's deposition, both Dr. Lin's and Dr. King's depositions were designated as evidence depositions. All three deposition notices stated that they would be taken "pursuant to the Illinois Statutes and Supreme Court Rules governing discovery and evidence depositions."

¶ 7　In addition, Papa pointed out in his argument to the Court of Claims that he would never have reason to conduct a discovery deposition of his client's own treating providers and that the depositions were conducted in a manner consistent with an evidence deposition, with him first examining Dr. Schoedinger, followed by cross-examination by Mr. Boltz for IDOT, followed by redirect by Papa, and recross by Mr. Boltz. Finally, Papa requested that should the Court of Claims find that the deposition testimony be excluded, he be allowed to reopen the proofs and retake Dr. Schoedinger's deposition for the purposes of evidence. At the bench trial on Darlene's legal malpractice claim against him, Papa also testified that he conferred with Darlene during a break in the proceedings before the Court of Claims, advising her of the possible impact of the disallowance of Dr. Schoedinger's testimony, and asked if she would like to seek a continuance, but that Darlene indicated that she wanted to move forward with the trial. However, Darlene testified that she did not recall such a conversation.

¶ 8     At the conclusion of the attorneys' arguments before the Court of Claims regarding the admissibility of Dr. Schoedinger's deposition, the commissioner reserved ruling on the issue and reminded the parties that the judges of the Court of Claims would be the final arbiters of the deposition's admissibility. Thereafter, the following relevant evidence was adduced before the Court of Claims. Darlene testified regarding the circumstances surrounding the motor vehicle accident, her injuries, pain, and suffering, and the details of her treatment. Darlene testified that following the accident, she experienced pain in her neck, lower back, hips, and buttocks. After conferring with Papa a day after the accident, she consulted with Dr. King, a chiropractor, regarding her pain. After several chiropractic treatments, Dr. King referred her for a consultation with a neurologist, Dr. Naseer, and a pain management specialist, Dr. Lin. Darlene testified that by September or October of 1998, her neck pain had resolved but she continued to experience pain in her lower back, hips, and buttocks. In October 1998, Dr. King referred Darlene to Dr. Schoedinger, an orthopedic surgeon, who performed surgery in 1999. Darlene testified that since the surgery, her symptoms have improved but that she still has some ongoing pain.

¶ 9     At the end of her direct examination, Darlene testified that roughly in September or October of 1998, she went to sit in a chair at work, but it rolled out from under her. She landed on her arm, but her hips hit the floor. She testified, however, that the character and content of her pain complaints did not change following the chair fall. Finally, Darlene testified that she did fill out an incident report about the chair fall, as it was the policy of her employer to document all incidents. Darlene's medical bills were admitted into evidence, totaling $58,000, approximately $40,000 of which were incurred after October 5, 1998. Darlene testified that these bills were submitted for payment to her employer in conjunction with her workers' compensation claim resulting from the April 1998 motor vehicle collision and that all had been paid.

¶ 10     At the conclusion of Darlene's testimony, the parties had another discussion with the commissioner regarding the admissibility of Dr. Schoedinger's deposition. Papa again stated his position that the deposition was an evidence deposition, but asked that should it be deemed to be discovery that the record be left open so that the deposition could be retaken. Attorney Ellison again stated her position that the deposition was a discovery deposition. The commissioner stated that he would leave the record open only if the parties agreed and again reserved ruling on the admissibility of the deposition.

¶ 11     The deposition of Dr. Charles King was admitted into evidence. The cover of the deposition designates that the deposition is an evidence deposition. Dr. King testified that he is a chiropractor and began treating Darlene on April 29, 1998, when she presented with lower back pain. Dr. King testified that Darlene had two MRIs, one on July 26, 1998, and the second on October 15, 1998. According to Dr. King, both MRIs showed the same disc damage. He testified that he expected Darlene to need treatment for her injuries in the future due to expedited degeneration above the fusion that was eventually performed by Dr. Schoedinger. He testified that he was not aware that Darlene fell from a chair in October 1998, but that a fall off a chair would have to be very dramatic to cause the injury Darlene suffered.

- 4 -

¶ 12    The deposition of Dr. Ei-Shun Lin, a pain management doctor who treated Darlene following the motor vehicle accident, was also admitted into evidence. The cover of the deposition designates that it is an evidence deposition. In contrast, the cover of the deposition of Dr. Schoedinger, the orthopedist who ultimately performed a disc fusion on Darlene in January 1999, designated that it was a discovery deposition. However, as stated above, the notices for all three depositions contained the same language, that they were being conducted "pursuant to the Illinois Statutes and Supreme Court Rules governing discovery and evidence depositions." Although the Court of Claims ultimately excluded Dr. Schoedinger's deposition from evidence, our review of the deposition is imperative to the proximate cause analysis required for our review of the circuit court's judgment on Darlene's legal malpractice claim.

¶ 13    Dr. Schoedinger testified that he is a board-certified orthopedic surgeon who first saw Darlene on October 27, 1998. He testified that Darlene complained of back, leg, and hip pain and gave a history of an automobile accident in which she sustained a concussion. In reviewing the MRI Darlene received on October 15, 1998, Dr. Schoedinger noted a central disc rupture at L5-S1. At that time, he recommended that Darlene continue treating with Dr. King and follow up in six weeks.

¶ 14    On November 9, 1998, Darlene called Dr. Schoedinger's office complaining of an increase in the severity of her pain. She was admitted to St. Anthony's Medical Center and was evaluated on November 10, 1998, with a lumbar myelogram that revealed abnormalities at L3-4, L4-5, and L5-S1. A CT scan confirmed posterior disc protrusion at L5-S1. Darlene ultimately decided that she could not live with her symptoms, and Dr. Schoedinger performed an anterior discectomy and instrumented interbody fusion at L5-S1 on January 20, 1999. He followed up with her on March 1, 1999, and she complained of lower back pain without leg complaints. Follow-up X-rays revealed the surgery was successful, and she was started on an exercise program and advised to increase her activities as tolerated. The postoperational pain she reported at a follow-up visit on March 25, 1999, was typical. He continued to follow up with her until January 25, 2000, and testified that she had steadily improved, although her pain is not expected to ever completely resolve. Dr. Schoedinger testified that his bills for treating Darlene, amounting to $15,198.18, were reasonable and customary.

¶ 15    Dr. Schoedinger testified that it was his opinion, to a reasonable degree of medical certainty, that Darlene's ruptured disc was either caused by or made symptomatic by the automobile accident, and that her injuries were of a permanent nature. On cross-examination, Dr. Schoedinger testified that he was not told that Darlene fell from a chair on October 5, 1998. On redirect, Dr. Schoedinger testified that the injuries Darlene sustained during the motor vehicle accident could have made Darlene more susceptible to an injury from a fall from a chair. IDOT did not question Dr. Schoedinger any further about the fall from the chair and did not present any expert medical evidence at the hearing.

¶ 16    On March 28, 2006, more than two years after the hearing, the Court of Claims issued its opinion. In its findings of fact, the court noted that a July 26, 1998, MRI showed disc damage at the L5-S1 location and that Dr. King testified within a reasonable degree of chiropractic certainty that Darlene sustained a sprain/strain to the cervical and lumbar spine with disc herniation and resultant compression as a result of the motor vehicle accident of April 28,

1998, that she will continue to experience future pain and future treatment, and that her injury was permanent in nature. The Court of Claims noted, however, that Dr. King "conceded that the injuries sustained by [Darlene] could have been caused by some other traumatic event, such as the October 5, 1998[,] fall from a chair at work." Similarly, the Court of Claims noted Dr. Lin's testimony that an MRI he ordered on September 24, 1998, showed a disc bulge at L5-S1 and that he believed, to a reasonable degree of medical certainty, that Darlene's injuries were caused by the automobile accident, but that "falling from the chair could cause the injuries sustained by [Darlene]."

¶ 17       In addition, the Court of Claims, in its factual findings, stated that "[w]orkers' compensation benefits have been received by [Darlene] pursuant to a filing at the Illinois Workers' Compensation Commission (formerly Illinois Industrial Commission), for accidental injuries sustained on October 5, 1998." For this factual finding, the court cited to the transcript of the hearing at page 78. However, a review of the transcript of the hearing on page 78 shows that Darlene testified that she filed a workers' compensation claim for the April 28, 1998, automobile accident and that her medical bills were being paid pursuant to that claim. There is no testimony that Darlene ever filed a workers' compensation claim for the fall from the chair incident on October 5, 1998. Rather, as stated above, Darlene testified that she filled out an accident report pursuant to her employer's policy that all incidents be reported.

¶ 18       As to IDOT's motion to exclude the deposition of Dr. Schoedinger, the Court of Claims found that because the deposition was not designated an evidence deposition in the notice of deposition, and Papa did not take steps to correct the designation pursuant to Illinois Supreme Court Rule 211, the deposition was to be considered a discovery deposition pursuant to Illinois Supreme Court Rule 202 (eff. Jan. 1, 1996). Accordingly, the Court of Claims excluded the deposition testimony of Dr. Schoedinger from the evidence it considered in reaching its opinion. The court of claims went on to conclude as follows:

          "[Darlene] has failed to prove that all of her damages were proximately caused by [IDOT]. The Court after reviewing all of the exhibits, specifically the testimony of [Darlene], testimony of the doctors involved herein, and the medical bills for treatment and testimony pertaining thereto, ([Darlene's] Exhibits 3-24) DOES FIND that any medical costs incurred on and after October 5, 1998[,] were not incurred as a proximate result of the accidental injuries sustained on April 28, 1998. Medical costs sustained on and after October 5, 1998[,] are the responsibility of [Darlene] or other entity not party to the case at bar."

The Court of Claims found that Darlene had sustained damages prior to October 5, 1998, in the form of medical expenses, lost wages, and property damage, and entered judgment in favor of Darlene and against IDOT in the amount of $17,000.

¶ 19       On April 12, 2006, Papa filed a petition for rehearing or new trial on the issue of damages in the Court of Claims on Darlene's behalf. In the petition for rehearing or a new trial, Papa pointed out several problems with the Court of Claims' using the October 5, 1998, date to cut off Darlene's medical damages. First, Papa explained that the court of claims erroneously assumed in its opinion that Darlene injured or aggravated her back problems on October 5, 1998, and then filed a workers' compensation claim claiming injuries as a result of the fall.

According to the evidence in the record, Papa explained, it was uncontradicted that Darlene never filed a workers' compensation claim for the incident of October 5, 1998, but rather, her only workers' compensation claim was filed on June 9, 1998, for lower back and neck injuries she sustained as a result of the automobile accident at issue. Second, Papa pointed out that to the extent that the Court of Claims used the evidence he introduced regarding the fact that Darlene's medical bills were paid by the workers' compensation claim to exclude them from damages in this action, such a finding would violate the collateral source rule, as such evidence was introduced for the limited purpose of proving the medical bills' reasonableness. Third, Papa argued that the Court of Claims erred in considering evidence of Darlene's alleged subsequent injury from the chair fall because such evidence is irrelevant without expert testimony linking the alleged injuries to the current injury.

¶ 20    In addition, Papa challenged the Court of Claims' characterizations of Dr. Lin's and Dr. King's testimony regarding causation. With regard to Dr. King, Papa pointed out that the testimony was, based on a reasonable degree of chiropractic certainty, the cervical sprain/strain and the lumbar strain with the disc herniation were caused by the automobile accident at issue. Rather than "conceding that the injuries sustained by [Darlene] could have been caused by some other traumatic event, such as the October 5, 1998, fall from a chair at work," as the Court of Claims stated in its opinion, Papa pointed out that Dr. King testified as follows:

> "Q. Okay. Let's say someone has had a history of falling down, let's say an individual had fallen off bicycles or fallen off chairs or just generally fall on the ground and hurt their back in different manners or forms; would that affect your treatment at all of an individual such as this?
>
> A. Depends on the severity of the fall."

Accordingly, Papa argued that Dr. King never conceded that Darlene's injuries were caused by some other traumatic event, as he was not even asked if some other traumatic event could have caused her injuries.

¶ 21    With regard to the testimony of Dr. Lin, Papa pointed out that Dr. Lin saw Darlene on September 24, 1998, with complaints of radicular pain, for which he ordered a series of epidural lumbar block injections. The first injections were performed on September 30, 1998, and a second round was scheduled for October 6, 1998. Accordingly, the October 6, 1998, injections were scheduled prior to Darlene's fall from the chair at work, and that date of service was therefore not related to the chair fall, but to the motor vehicle accident.

¶ 22    Finally, with regard to the Court of Claims' opinion on causation, Papa argued in his petition for rehearing that there was no evidence in the record that Darlene injured her back in the October 5, 1998, incident at work. The only testimony regarding the facts and circumstances of the alleged fall came from Darlene herself, who testified that her symptoms remained the same before and after the fall. With regard to the admissibility of Dr. Schoedinger's deposition, Papa argued that Illinois Supreme Court Rule 202 (eff. Jan. 1, 1996) was inapplicable when the parties had stipulated that the deposition was to be an evidence deposition, and that the record contained evidence that this was the case. Papa requested rehearing or a new trial on damages.

¶ 23    The record before the circuit court in the instant legal malpractice action ends with a response from IDOT on the petition for rehearing and a reply from Papa, both of which are not file-stamped by the Court of Claims. In addition, the record before the circuit court did not contain an order denying Papa's petition for rehearing.

¶ 24    Turning to the testimony presented to the circuit court in the instant legal malpractice action, Papa testified regarding his representation of Darlene in the underlying action before the Court of Claims. He testified that he had an agreement with counsel for IDOT that all of the depositions that were taken of Darlene's treating doctors would be designated as evidence depositions. He testified that it is his custom and practice to conduct evidence depositions of treating physicians, and he would never have occasion to take a discovery deposition of a treating doctor for an injured client. He testified that he conducted the deposition of Dr. Schoedinger as he does all evidence depositions. He testified that he would have had the opportunity to review the deposition after it was prepared, and would have done so in preparation for the hearing, but, in this case, he did not observe that the cover of Dr. Schoedinger's deposition designated it as a discovery deposition. Furthermore, as stated above, he testified that at the hearing before the court of claims, he requested that the proofs be reopened should the deposition testimony be excluded, and he conferred with Darlene about the possibility of seeking a continuance, but that she declined. Darlene testified that she did not recall having such a discussion.

¶ 25    Both parties presented experts to testify concerning the standard of care and causation. David Damick, an attorney licensed in Illinois and Missouri who practices in the area of plaintiff's personal injury, testified on behalf of Darlene. He testified that Papa breached the standard of care by failing to designate Dr. Schoedinger's deposition as an evidence deposition pursuant to Illinois Supreme Court Rule 211 and for failing to review the deposition and correct the designation prior to the hearing. Furthermore, attorney Damick testified that Papa's failure to designate the deposition as an evidence deposition proximately caused Darlene to recover less than she was entitled to recover because Dr. Schoedinger was the only witness to testify that the surgery was necessitated by the motor vehicle accident.

¶ 26    Joseph Bartholomew, an attorney licensed to practice law in Illinois, New York, and Missouri, testified on behalf of Papa. He testified that Papa met the standard of care because the deposition notices of all three of Darlene's treating doctors had identical language, and the other two depositions were correctly designated by the court reporter as evidence depositions. In addition, he testified that the plaintiff's attorney in a personal injury action would never take the discovery deposition of a treating physician. He testified that it is commonplace to make agreements with opposing counsel regarding the designation of a deposition, and that Papa further met the standard of care at the hearing by seeking leave to supplement the record should the deposition testimony be excluded and by discussing the possibility of a continuance with his client.

¶ 27    Regarding causation, attorney Bartholomew testified that the admission of Dr. Schoedinger's testimony would not have affected the outcome of Darlene's case before the court of claims. According to attorney Bartholomew, Dr. Lin's and Dr. King's testimony, along with Darlene's testimony and the admission of Dr. Schoedinger's bills, which were in

evidence, would have been sufficient to support an award in favor of Darlene had the court of claims, as the trier of fact, not been focused on the incident with the chair.

¶ 28 At the conclusion of the bench trial on Darlene's legal malpractice claim against Papa, the circuit court took the case under advisement. On December 20, 2012, the circuit court entered an order finding that Papa did not breach his legal duty to Darlene and that the exclusion of Dr. Schoedinger's deposition was not the proximate cause of Darlene's damages. Rather, the circuit court found that Darlene did not recover fully before the Court of Claims due to the Court of Claims' finding that her October 5, 1998, chair fall was a superceding event. Accordingly, the circuit court entered judgment in favor of Papa. Darlene filed a timely notice of appeal.

¶ 29                                                    ANALYSIS

¶ 30 Although Darlene argues that the circuit court erred in finding that Papa did not breach the standard of care and in finding that Darlene did not prove that the exclusion of Dr. Schoedinger's deposition was the proximate cause of Darlene's damages, both findings are essential elements of a legal malpractice action, the absence of which defeats Darlene's claim. See *Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 351 (2000). Based on the record before us, we find the issue of proximate cause to be dispositive, and so decline to address the issue of whether the circuit court erred in finding that Papa did not breach his duty to Darlene.

¶ 31 Focusing on the issue of whether the circuit court erred in finding that the exclusion of Dr. Schoedinger's deposition from evidence at the trial in the underlying action was not the proximate cause of Darlene's damages, we must first determine our standard of review. As stated above, we granted Darlene's motion to strike Papa's statement of the standard of review in his brief because he cited to an unpublished order. However, we denied the motion to strike that paragraph of Papa's brief wherein he challenges Darlene's statement in her brief that because the evidence in this case consists mainly of documents, we should employ a *de novo* standard of review. In any case, we choose to address the appropriate standard of review independently rather than simply accepting Darlene's assertion. See *TCA International, Inc. v. B&B Custom Auto, Inc.*, 299 Ill. App. 3d 522, 527 (1998) (notwithstanding the appellant's failure to address the threshold issue of the standard of review, the appellate court chose to address the issue rather than simply accepting the appellee's unchallenged assertion).

¶ 32 Generally, the standard of review in a bench trial is whether the judgment is against the manifest weight of the evidence. *People ex rel. Department of Labor v. 2000 W. Madison Liquor Corp.*, 394 Ill. App. 3d 813, 817 (2009). A judgment is against the manifest weight of the evidence only when the opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on the evidence. *Id.* at 817-18. Moreover, the issue of proximate causation in a legal malpractice setting in particular is considered a factual issue to be decided by the trier of fact. *Buckles v. Hopkins Goldenberg, P.C.*, 2012 IL App (5th) 100432, ¶ 19. Such a determination is to be made by the trier of fact after consideration of all the evidence and attending circumstances. *Id.* For these reasons, we will employ the manifest weight of the evidence standard of review in reviewing the circuit court's finding regarding

proximate causation. Nevertheless, we note that had we employed a less deferential standard of review, the outcome would be the same based on the record before us.

¶ 33 The proximate cause element of a legal malpractice claim requires that the plaintiff show that but for the attorney's malpractice, the client would have been successful in the undertaking the attorney was retained to perform. *Owens*, 316 Ill. App. 3d at 351. As with any negligence claim, the plaintiff's burden of proof on this element is to show that it is more probably true than not true. See Illinois Pattern Jury Instructions, Civil, No. 21.01 (2011). Here, Darlene argues that the circuit court erred in determining that proximate cause was lacking because "but for" the exclusion of Dr. Schoedinger's deposition testimony before the court of claims, she would have, more likely than not, recovered for her damages incurred after October 5, 1998. After reviewing the record in its entirety, we cannot reach this conclusion.

¶ 34 It is clear from the order of the Court of Claims that it believed there was sufficient evidence in the record before it to support a finding that Darlene suffered a subsequent injury on October 5, 1998, when she fell from a chair, and that subsequent injury necessitated all of her medical treatment after that date. Dr. Schoedinger's deposition testimony notwithstanding, we find that the Court of Claims' finding in this regard was factually and legally unsound for all of the reasons set forth in Papa's petition for rehearing following the underlying judgment. Dr. King definitively testified that MRIs taken before and after the chair fall showed the same disc damage to Darlene's lumbar spine and that Darlene's fall from a chair would have to be very dramatic to cause Darlene's injuries. IDOT produced no evidence concerning the severity of Darlene's fall other than Darlene's own testimony, wherein she stated that her lumbar symptoms were the same before and after the fall. Furthermore, Dr. King and Dr. Lin only testified generally that a fall from a chair could cause the type of injuries Darlene experienced. They did not definitively testify that this was a superceding event that proximately caused Darlene's later treatment. In fact, IDOT introduced no expert testimony on this point because there was simply no evidence that Darlene suffered a significant injury to her lumbar spine caused by the chair fall, and the Court of Claims had no basis to exclude her subsequent treatment from her damage award irrespective of whether Dr. Schoedinger's testimony was admitted into evidence.

¶ 35 As set forth in Papa's petition for rehearing before the Court of Claims, the judgment order misconstrued other evidence regarding the chair fall as well. Despite the Court of Claims' assertion in its judgment order, there was no evidence that Darlene filed a workers' compensation claim as a result of the chair fall. Rather, the evidence was uncontradicted that the only claim she filed was for the accident at issue. Dr. Schoedinger's deposition testimony would not have corrected the Court of Claims' findings in this regard.

¶ 36 We cannot say that, more likely than not, Dr. Schoedinger's testimony linking Darlene's surgery to the April 1998 car accident would have changed the decision of the Court of Claims. Nor can we say that, more likely than not, Dr. Schoedinger's testimony that it was "certainly possible" that the fall from the chair may have been injurious because of a predisposition to injury as a result of the automobile accident would have changed the outcome for Darlene had it been admitted into evidence. For reasons unbeknownst to this court, the Court of Claims was fixated on the chair fall despite the lack of evidence of the facts and circumstances surrounding

- 10 -

the event and whether or not it definitively caused Darlene's injury to her lumbar spine. It is clear from the judgment order that the Court of Claims was not cutting off Darlene's damages subsequent to October 5, 1998, because Dr. Schoedinger's causation testimony was excluded, but rather because it erroneously believed that IDOT had somehow proved the fall from the chair was a superceding event. Darlene does not argue that Papa could have done anything more following the Court of Claims' decision to correct these erroneous legal and factual conclusions, and indeed, he could not, for the decision was nonappealable. See *Klopfer v. Court of Claims*, 286 Ill. App. 3d 499, 502-03 (1997) (stating that decisions of the Court of Claims are generally not subject to judicial review and there is no means, by writ of *certiorari* or otherwise, to review the correctness of any decision of the Court of Claims based on the merits of the case before it). Because we find that the decision of the Court of Claims to exclude Darlene's medical damages beyond October 5, 1998, was based on erroneous conclusions of facts and law on the part of the Court of Claims, over which we have no power, and not on the exclusion of Dr. Schoedinger's testimony, we cannot say that the circuit court's finding that Darlene failed to prove proximate cause on her legal malpractice claim against Papa was against the manifest weight of the evidence.

¶ 37                                   CONCLUSION

¶ 38     For the foregoing reasons, we affirm the December 20, 2012, order of the circuit court of St. Clair County, which entered a judgment in favor of Papa on Darlene's complaint for legal malpractice.

¶ 39     Affirmed.


¶ 40     JUSTICE CATES, specially concurring.

¶ 41     I write this special concurrence in order to express my concerns about this court's inability to right what I believe is an obvious injustice visited upon the plaintiff by the Court of Claims of the State of Illinois. As so clearly noted in the majority's disposition, the findings by the members of the Court of Claims were "factually and legally unsound" (*supra* ¶ 34). These factual and legal errors denied plaintiff the recovery she was entitled to receive after suffering a serious injury caused by a collision involving an IDOT motor vehicle.

¶ 42     Many, but not all, of the errors made by the commissioner and members of the Court of Claims are identified in the majority opinion. There are two additional matters, however, that merit mention. First, the hearing in the underlying case before the Court of Claims was held on March 18, 2004. The opinion was not released until two years later (March 28, 2006). Citizens who appear in any court proceeding in our state should expect that their case will receive attention in a timely manner. This did not happen here and may explain why the order is filled with so many inaccuracies.

¶ 43     Second, the parties had a dispute over the introduction of the deposition of Dr. Schoedinger. Plaintiff's counsel argued that he had an agreement with the State that all of the

physician depositions would be evidence depositions. When it came time to introduce Dr. Schoedinger's deposition, however, the State objected, claiming it was only a discovery deposition. Whether there was an agreement or not, plaintiff's counsel requested leave to take the evidence deposition and reopen his case. Procedurally, this kind of request, especially in light of the alleged agreement, would not have prejudiced the State and would have, hopefully, clarified the evidence that was so poorly misconstrued. Furthermore, plaintiff would have had ample time to submit this deposition in light of the fact that the court of claims took two years to issue its order.

¶ 44        I believe that in this case, the Court of Claims committed procedural and substantive errors. Unfortunately, citizens who appear before the Court of Claims and its commissioners have no avenue for direct review of the merits of the decision. The Court of Claims' decisions are subject to review only in the rarest of circumstances (*Rossetti Contracting Co. v. Court of Claims*, 109 Ill. 2d 72 (1985); *Klopfer v. Court of Claims*, 286 Ill. App. 3d 499 (1997)). Perhaps justice and a public policy of fairness require that our legislature revisit the Court of Claims Act (705 ILCS 505/1 to 29 (West 2012)) to provide a statutory means that allows for a review of the merits of decisions issued pursuant to the Act.