2015 IL App (3d) 130809

Opinion filed April 27, 2015

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2015

| | | |
|---|---|---|
| CINCINNATI INSURANCE COMPANY, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-13-0809 |
| | ) | Circuit No. 09-MR-663 |
| | ) | |
| ROBERT PRITCHETT, | ) | Honorable |
| | ) | Barbara Petrungaro, |
| Defendant-Appellee. | ) | Judge, Presiding. |
| | ) | |
| | ) | |

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices Carter and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiff, Cincinnati Insurance Co. (Cincinnati), filed this interlocutory appeal in

connection with a declaratory judgment action it brought against the defendant, Robert Pritchett

(Pritchett). Pritchett was covered under an automobile liability insurance policy issued by

Cincinnati. Cincinnati filed suit in the circuit court of Will County seeking a declaration that it

has no obligation to arbitrate Pritchett's claim for bodily injury and other claims arising from a

single-car vehicle accident on October 10, 2007. Cincinnati and Pritchett filed cross-motions for summary judgment.

¶ 2    Relying on our appellate court's decision in *Groshans v. Dairyland Insurance Co.*, 311 Ill. App. 3d 876 (2000), the trial court found that the language of the Cincinnati policy at issue is ambiguous as to whether automobile accidents like Pritchett's, which did not involve physical contact between the insured's car and a hit-and-run vehicle, are covered under the policy. Accordingly, the trial court denied both parties' motions for summary judgment. Cincinnati filed a motion for reconsideration and clarification which the trial court denied.

¶ 3    Cincinnati then filed a motion to certify questions for interlocutory appeal under Illinois Supreme Court Rule 308(a) (eff. February 26, 2010). The trial court granted Cincinnati 's motion and certified the following two questions for interlocutory appeal:

"1. Is the policy language ambiguous in that it does not clearly require physical contact between an insured vehicle and another vehicle, either directly or through a continuous chain of events, for coverage to exist?;

2. Is the policy language ambiguous with respect to the necessity of physical contact between an insured vehicle and either a hit and run vehicle or an object caused by a hit and run vehicle to make contact with the insured vehicle through a continuous sequence of events?"

¶ 4    Although we initially declined to accept Cincinnati's petition seeking our review of these questions, our supreme court has by supervisory order directed us to accept the appeal and answer the certified questions. *Cincinnati Insurance Co. v. Pritchett*, No. 117102 (March 26, 2014). We conclude that, like the policy language at issue in *Groshans*, the policy at issue in this case is ambiguous as to whether coverage extends to hit-and-run automobile accidents that

2

involve no physical contact between the insured vehicle and either a hit-and-run vehicle or an object that a hit-and-run vehicle causes to make contact with the insured vehicle. Accordingly, we answer both certified questions in the affirmative and remand the case for further proceedings.

¶ 5                                                                    FACTS

¶ 6         On October 10, 2007, Pritchett was driving a 2000 Mack semitrailer owned by his employer, Carl A. Anderson & Sons, Inc. (Anderson), when he was involved in a single-car accident. Pritchett was traveling westbound on Diehl Road toward the intersection of Diehl Road and Old Diehl Road. When Diehl Road approaches that intersection, the right westbound lane becomes a turn lane and curves to the right onto Old Diehl Road. Pritchett testified that he was traveling in the far right lane at approximately 40 miles per hour and intended to turn right onto Old Diehl Road. Pritchett claimed that, when he was approximately 50 to 100 feet from the right turn lane, a light green sedan passed his truck and cut in front of him, approximately one foot from his bumper. Pritchett claimed that, in response to this, Pritchett slammed on his brakes and turned the wheel to the right. His vehicle then hit the curb on the right side of the road and Pritchett turned the wheel to the left. As a result, the load in the truck shifted, causing the truck to flip over. Pritchett stated that the green sedan did not stop and continued westbound on Diehl Road. Pritchett stated that the green sedan never made contact with his vehicle.

¶ 7         There were two eyewitnesses to the accident, Janie Tomasek and Thomas Modzelewski. Both testified that there were no other vehicles in the vicinity of Pritchett's truck at the time of the accident. Tomasek was stopped at a stop sign at the intersection of Old Diehl Road and Diehl Road when she first saw Pritchett's truck. She testified that Pritchett was traveling in excess of the speed limit at approximately 45 miles per hour. She stated that Pritchett's truck

3

made contact with the curb, bounced back, and "popped" up on the curb a second time, causing the truck to flip over. Tomasek testified that she saw a sedan traveling in the left lane of Diehl Road approximately four to six car lengths in front of Pritchett's truck but did not pass Pritchett's truck or swerve into Pritchett's lane of travel. According to Tomasek, the sedan was never any closer than four to six car lengths from Pritchett's truck.

¶ 8     Modzelewski was standing on the porch of the employer's building when he first saw Pritchett's truck. He testified that Pritchett was traveling "awkwardly fast for that corner" when it approached the turn. Modzelewski stated that, after Pritchett's truck hit the curb, it "hopped the curb" and "it seemed like the driver overcompensated maybe and jackknifed and went over on its side." Modzelewski did not witness any other vehicles in the vicinity of Pritchett's truck at the time of the accident.

¶ 9     Cincinnati had issued a policy of automobile liability insurance to Anderson which was in effect at the time of Pritchett's accident. With respect to Uninsured Motorist Coverage, the policy stated:

¶ 10     "A.     Coverage

1. We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or operator of an 'uninsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.' The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the 'uninsured motor vehicle.'

* * *

F. Additional Definitions

4

As used in this endorsement:

\* \* \*

4. 'Uninsured motor vehicle' means a 'motor vehicle':

\* \* \*

c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. *The vehicle must hit, or cause an object to hit, an 'insured,' a covered 'auto' or a vehicle an 'insured' is 'occupying.' If there is no physical contact with the hit-and-run vehicle, the facts of the 'accident' must be proved."* (Emphasis added.)

¶ 11    The policy required arbitration if the parties do not agree whether a claimant "is legally entitled to recover damages from a party responsible for the 'accident.' "

¶ 12    Pritchett made a claim under the uninsured motorist coverage in the Cincinnati policy. Cincinnati denied coverage and filed this declaratory judgment action, arguing that, for coverage to apply, "the [hit-and-run] vehicle must hit, or cause an object to hit, an 'insured,' a covered 'auto' or a vehicle an 'insured' is 'occupying.' " By Pritchett's own admission, that did not occur here. The parties filed cross-motions for summary judgment.

¶ 13    The trial court denied both motions. In so ruling, the trial court relied principally on our appellate court's decision in *Groshans*. In *Groshans*, our appellate court held that the uninsured motorist provision of the automobile insurance policy at issue in that case was ambiguous as to whether coverage extended to automobile accidents that did not involve physical contact between the insured's car and a hit-and-run vehicle. The trial court ruled that the relevant language of the Cincinnati policy at issue in the instant case "appears to be identical to that in

5

*Groshans*" and that, "[a]lthough Plaintiff contends that there is additional language, the policies appear to be very similar." Accordingly, the trial court ruled that, like the policy in *Groshans*, the Cincinnati policy is ambiguous. The trial court also ruled that, because there was no physical contact, Pritchett must prove the facts of the accident so that the court could ascertain whether coverage applies before the court would send the matter to arbitration.

¶ 14    Cincinnati subsequently filed a motion for reconsideration and clarification which the trial court denied. In its order denying reconsideration, the trial court again applied *Groshans* and reaffirmed the reasoning in its prior order. The trial court explained that the "first and second sentences of the [uninsured motorist liability] section appear to require actual physical contact, while the third sentence, like the policy in *Groshans*, requires the facts of the accident to be proved when there is no physical contact with the hit and run vehicle." Thus, the trial court reasoned that, as in *Groshans*, the Cincinnati policy was ambiguous.

¶ 15    Cincinnati then filed a motion to certify questions for interlocutory appeal under Illinois Supreme Court Rule 308(a). The trial court granted Cincinnati 's motion, finding that the court's order dismissing the parties' cross-motions for summary judgment "involves a question of law as to which there is substantial ground for difference of opinion and the immediate appeal from the Order may materially advance the ultimate termination of the litigation." After receiving proposed certified questions from the parties, the trial court issued an order certifying the questions as specified above.

¶ 16    Our appellate court initially denied Cincinnati's application for leave to appeal under Supreme Court Rule 308, but later vacated its prior order and entered an order allowing Cincinnati 's application for leave to appeal after our supreme court issued a supervisory order

6

directing our appellate court to vacate its prior order and to answer the questions certified by the trial court.

¶ 17                                            ANALYSIS

¶ 18        Our analysis in this case is limited to answering the questions of law certified for interlocutory review, which is governed by a *de novo* standard of review. *Thompson v. Gordon*, 356 Ill. App. 3d 447, 451 (2005).

¶ 19        The certified questions ask us to determine whether the Cincinnati policy unambiguously limited coverage for hit-and-run accidents to situations involving some type of physical contact between the insured's vehicle and the hit-and-run vehicle or between the insured's vehicle and an object that the hit-and-run vehicle caused to come in contact with the insured's vehicle. Before answering these questions, we must first address Cincinnati's argument the Illinois Insurance Code (Code) (215 ILCS 5/1 *et seq.* (West 2006)) requires such "physical contact" coverage limitations as a matter of law. We hold that the Code imposes no such requirement.

¶ 20        Section 143a(1) of the Code requires automobile liability insurance policies to include "protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom." 215 ILCS 5/143a(1) (West 2006). The statute does not expressly limit such coverage to accidents involving physical contact. Our supreme court and our appellate court have ruled that the Code does not bar insurers from including such a limitation in a policy, have repeatedly upheld physical-contact limitations as "valid," and have found such limitations consistent with the statute's policy of preventing fraudulent claims. See, *e.g.*, *Ferega v. State Farm Mutual Automobile Insurance Co.*, 58 Ill. 2d 109, 111 (1974) ("[W]e see no inconsistency between the policy provisions [limiting

7

coverage to accidents involving physical contact] and the requirements of the statute. Indeed, both seem to be entirely consistent and to be aimed to be entirely consistent and to be aimed at the avoidance of fraudulent claims."); *Kannel v. State Farm Mutual Automobile Insurance Co.*, 222 Ill. App. 3d 1013 (1991). However, as we ruled in *Groshans*, the Code does not *require* insurers to limit coverage for hit-and-run accidents to situations involving direct or indirect physical contact. *Groshans*, 311 Ill. App. 3d at 878-79; see also *id.* at 879 ("Illinois law does not *require* actual physical contact [for hit-and-run coverage] but merely *permits* an insurance policy to require such contact" (emphases added)).

¶ 21        We acknowledge that some older decisions of our appellate court have held or implied that section 143a(1) requires insurers to limit coverage to accidents involving physical contact. See *Swan v. Country Mutual Insurance Co.*, 306 Ill. App. 3d 958 (1999); *Illinois National Insurance Co. v. Palmer*, 116 Ill. App. 3d 1067 (1983). However, in *Groshans*, our appellate court ruled to the contrary and declined to follow those decisions. *Groshans*, 311 Ill. App. 3d at 878-79. Although the legislature has amended section 143a of the Code twice since *Groshans* was issued, it has not invalidated *Groshans* or amended the statute to clarify that coverage applies only in cases of physical contact. This suggests that the legislature does not disapprove of *Groshans*' interpretation of the statute. See *Ferega,* 58 Ill. 2d at 111-12; see also *Bruso v. Alexian Brothers Hospital*, 178 Ill. 2d 445, 458 (1997) ("in amending a statute, the legislature is presumed to have been aware of judicial decisions interpreting the statute and to have acted with this knowledge").

¶ 22        Accordingly, we proceed to the certified questions, which ask us to determine whether the Cincinnati policy is ambiguous as to whether coverage extends only to accidents involving physical contact. The policy provides coverage for "all sums the 'insured' is legally entitled to

8

recover as compensatory damages from the owner or operator of an 'uninsured motor vehicle.' " In section F(4)(c), the policy defines an "uninsured motor vehicle" to include, inter *alia*:

> "a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit, or cause an object to hit, an 'insured,' a covered 'auto' or a vehicle an 'insured' is 'occupying.' If there is no physical contact with the hit-and-run vehicle, the facts of the 'accident' must be proved."

¶ 23    As Cincinnati notes, the second sentence of the above definition states that coverage applies only when the hit-and-run vehicle "hit[s], or causes an object to hit," the insured vehicle. When read in isolation, that sentence suggests a physical-contact requirement. However, the third sentence of the above definition states that coverage applies even when "there is no physical contact with the hit-and-run vehicle," so long as the facts of the accident are proved. When these two sentences are read together, the extent of the policy's physical-contact requirement (if any) becomes unclear and the policy becomes susceptible of two equally reasonable interpretations. On the one hand, the policy may be read as covering accidents in which the hit-and-run vehicle "hits" or "causes an object to hit" the insured's vehicle, but as requiring the facts to be proven in the latter scenario (*i.e.*, when the alleged "contact" is with an "object" rather than with the hit-and-run vehicle itself). On this reading (which is urged by Cincinnati), the third sentence does not contradict or eliminate the physical-contact requirement imposed by the previous sentence; it merely explains how a certain type of physical contact must be proven. On the other hand, however, the policy might be read as covering certain accidents which involve *no physical contact of any kind*. The third sentence provides for coverage where there is no "physical contact with the hit-and-run vehicle," so long as the facts of the accident are proved. The phrase "physical contact with the hit-and-run vehicle" may reasonably be

9

interpreted as including both direct physical contact with the hit-and-run vehicle and indirect contact with that vehicle by means of contact with an object that the hit-and-run vehicle causes to hit the insured's vehicle. On this reading, where the facts of the accident are proved, the policy covers all hit-and-run accidents, even those that do not involve any such physical contact. We find both of these conflicting interpretations of the Cincinnati policy to be reasonable. Therefore, the policy is ambiguous.

¶ 24        In further support of our holding, we note that the relevant language of the Cincinnati policy is materially indistinguishable from the policy language at issue in *Groshans*, which our appellate court found to be ambiguous. That policy language provided:

> " ' We promise to pay damages, excluding punitive or exemplary damages, the owner or operator of an uninsured motor vehicle is legally obligated to pay because of bodily injury you suffer in a car accident while occupying a car, or as a pedestrian, as a result of having been struck by an uninsured motor vehicle.
>
> * * *
>
> A hit-and-run motor vehicle, if the driver or owner cannot be identified and which strikes, or causes another vehicle to strike, you or a motor vehicle you are occupying is an uninsured motor vehicle. If there is no physical contact with the hit-and-run vehicle the facts of the accident must be proved.' " (Emphases omitted.) *Groshans*, 311 Ill. App. 3d at 877.

The accident in *Groshans*, like the accident here, did not involve any physical contact between the insured's vehicle and the hit-and-run vehicle. (The insured in *Groshans* claimed that he swerved to avoid an alleged hit-and-run driver which caused his car to leave the roadway and roll over in a ditch. *Groshans*, 311 Ill. App. 3d at 877.) At issue was whether the insured's

10

automobile insurance policy covered such an accident. The insurer argued that the policy provisions quoted above unambiguously restricted coverage to accidents involving physical contact with the hit-and-run vehicle. Rejecting this argument, our appellate court held that the policy provision requiring the facts of an accident to be proved when there is no physical contact with the hit-and-run vehicle was "susceptible to more than one reasonable interpretation," and therefore ambiguous. *Id.* at 879-80.

¶ 25        Cincinnati argues that the policy at issue in *Groshans* is distinguishable from the policy in this case for two reasons. First, Cincinnati maintains that the *Groshans* policy "does not define what an uninsured motor vehicle is." Second, Cincinnati contends that the *Groshans* policy sets forth only a single "coverage scenario," *i.e.*, it provides coverage "only when a hit-and-run vehicle makes physical contact with an insured vehicle," whereas the Cincinnati policy provides coverage both in that scenario and when the hit-and-run vehicle causes an object to hit the insured vehicle. Cincinnati asserts that the "lack of a second coverage scenario creates ambiguity in the *Groshans* policy" because the *Groshans* policy later states that "[i]f there is no physical contact with the hit and run vehicle the facts of the accident must be proved." According to Cincinnati, its own policy, with its "two distinct coverage scenarios," "does not suffer from the same flaw."

¶ 26        We do not find these arguments persuasive. First, contrary to Cincinnati's argument, the *Groshans* policy defined what qualified as an "uninsured motor vehicle" under the policy. Specifically, the *Groshans* policy stated that " '[a] hit-and-run motor vehicle, if the driver or owner cannot be identified and which strikes, or causes another vehicle to strike, you or a motor vehicle you are occupying *is an uninsured motor vehicle.*' " (Emphases added, omitted, and in original.) *Groshans*, 311 Ill. App. 3d at 877. In addition, the *Groshans* policy did not set forth

11

only a single "coverage scenario"; rather, like the Cincinnati policy, it provided coverage in two distinct circumstances. Specifically, it provided coverage when a hit-and-run motor vehicle " 'strikes, *or causes another vehicle to strike*' " the insured's vehicle. (Emphasis added.) *Id.* Nevertheless, our appellate court held that a separate policy provision stating that " '[i]f there is no physical contact with the hit-and-run vehicle the facts of the accident must be proved' " rendered the *Groshans* policy ambiguous as to whether coverage was limited to accidents involving physical contact. *Id.* at 879. We find the Cincinnati policy ambiguous in the same respect.

¶ 27    For the foregoing reasons, we answer both certified questions in the affirmative.

¶ 28                                    CONCLUSION

¶ 29    Certified questions answered; cause remanded.

12