JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
¶ 1 The defendant, Robert Pritchett, appeals from the circuit court's order granting declaratory judgment for the plaintiff, Cincinnati Insurance Company (Cincinnati), and argues that the court's decision was against the manifest weight of the evidence.
¶ 2 FACTS
¶ 3 In October 2007, Pritchett was driving a semitruck owned by his employer, Carl A. Anderson & Sons, Inc., when Pritchett lost control of the truck, hit the curb, and flipped the truck over. Cincinnati had issued an automobile liability insurance policy to Carl A. Anderson & Sons, Inc. Pertinent portions of the policy stated,
"A. Coverage
1. We will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or operator of an 'uninsured motor vehicle.' The damages must result from 'bodily injury' sustained by the 'insured' caused by an 'accident.' The owner's or operator's liability for these damages must result from the ownership, maintenance or use of the 'uninsured motor vehicle.'
* * *
F. Additional Definitions
As used in this endorsement:
* * *
4. 'Uninsured motor vehicle' means a 'motor vehicle':
* * *
c. That is a hit-and-run vehicle and neither the driver nor owner can *345 be identified. The vehicle must hit, or cause an object to hit, an 'insured,' a covered 'auto' or a vehicle an 'insured' is 'occupying.' If there is no physical contact with the hit-and-run vehicle, the facts of the 'accident' must be proved."
The policy further required arbitration if the parties do not agree whether a claimant "is legally entitled to recover damages from a party respondent for the 'accident.' " Pritchett made a claim under the uninsured motorist provision of the policy in 2008, and Cincinnati denied coverage on the basis that the accident did not involve an uninsured vehicle or any other second vehicle. Pritchett questioned the denial, and Cincinnati confirmed its denial. Pritchett then filed a demand for arbitration.
¶ 4 In 2009, Cincinnati filed a complaint for declaratory judgment against Pritchett. The complaint alleged (1) Pritchett was not entitled to arbitrate issues regarding coverage because "[w]ell-established Illinois law clearly holds that coverage issues are not subject to arbitration agreements in uninsured motorist provisions of a policy and should be determined prior to arbitration proceedings" (citing State Farm Fire & Casualty Co. v. Yapejian , 152 Ill. 2d 533, 178 Ill.Dec. 745, 605 N.E.2d 539 (1992) ), (2) the accident was not covered by the policy because "[t]he subject occurrence did not involve an uninsured motor vehicle, or any other second vehicle," and (3) "[t]he accident claimed by Pritchett does not fall within the definition [of] an accident with an 'uninsured motion vehicle' because the subject occurrence does not involve a vehicle which hit, or caused an object to hit, Pritchett's vehicle."
¶ 5 The parties filed cross-motions for summary judgment. Pritchett argued, in part, that the policy was ambiguous and had to be construed in his favor. The court denied both motions. In doing so, it stated, "[T]he policy is ambiguous. *** [H]owever, [Pritchett] must prove the facts of the accident as there was no contact in order for the Court to ascertain whether coverage applies. This must be done before the Court would send the matter to arbitration." Cincinnati filed a motion to reconsider, which was denied. The court ultimately certified two questions for interlocutory appeal: (1) "Is the *** policy language ambiguous in that it does not clearly require physical contact between an insured vehicle and another vehicle, either directly or through a continuous chain of events, for coverage to exist?"; and (2) "Is the *** policy language ambiguous with respect to the necessity of physical contact between an insured vehicle and either a hit and run vehicle or an object caused by a hit and run vehicle to make contact with the insured vehicle through a continuous sequence of events?" This court answered both questions in the affirmative and remanded for further proceedings. Cincinnati Insurance Co. v. Pritchett , 2015 IL App (3d) 130809, ¶¶ 26, 28, 391 Ill.Dec. 744, 31 N.E.3d 420.
¶ 6 The matter was set for a bench trial to determine "whether the coverage, under the Uninsured Motorist Policy applie[d]." Pritchett testified that he was employed with Carl A. Anderson & Sons, Inc. driving a semitruck. On the day of the accident, he was hauling 19 tons of gravel. He made a left turn onto Diehl Road and stayed in the right-most lane. He was driving approximately 40 miles per hour. Pritchett had begun to slow and activated his right turn signal about 50 to 100 feet before the right turn lane. He observed a light green, four-door sedan through his driver's side mirror. The sedan was in the lane next to him, "[a]bout halfway up the trailer." The sedan sped up and made a "jerky" movement in front of Pritchett "like it was going to make a right turn, *** but changed [its]
*346 mind at the last minute." The sedan was partially in Pritchett's lane. Pritchett stated, "If [the sedan] would have kept going, [it] would have hit my bumper." After the sedan "jerk[ed]" into Pritchett's lane, it returned to the left lane and continued driving at the same speed-about 45 to 50 miles per hour. When the sedan entered partially into Pritchett's lane, Pritchett "[h]it the brakes and turned the wheel to the right." Pritchett's truck hit the curb, and he then turned the wheel to the left. The truck then tipped over. At that point, the sedan was about an eighth of a mile ahead of Pritchett. Pritchett stated that he lost consciousness. He told the investigating police officer, Officer Richard Morgan, and his boss, Carl Anderson, that a vehicle cut him off, but he did not remember anything else he told them. He denied driving too fast.
¶ 7 Tom Modzelewski testified that on the day of the accident he was working as a landscape architect for Western Du Page Landscaping near the corner of Diehl Road. As he was leaving the office through the front door of the building, he closed the door, turned around to face Diehl Road, and "witnessed the semi dump truck driving, hopping the curb, and then looked like it jackknifed and then flipped over on to its side, [d]umping the gravel." Modzelewski stated that "the whole duration was maybe five seconds." He observed the truck driving before it hit the curb and thought it "seemed [to be traveling] fast *** in [his] opinion." He could see a vehicle or semitruck length in front of Pritchett, but did not see any vehicle in front of Pritchett. He had observed other semitrucks in that location and believed that they "had generally been traveling more slowly than Mr. Pritchett was on the date of the occurrence." Modzelewski then went back into the office and called 911.
¶ 8 Janie Tomasek testified via evidence deposition that she had been the receptionist at Western Du Page Landscaping. At the time of the accident, she was in her vehicle at a stop sign about to turn onto Diehl Road. She saw a vehicle driving in the left lane and about a "football field" behind it in the right lane was Pritchett's semitruck. She then saw the truck hit the curb twice and then tip over. She believed the truck was traveling at a speed of "at least 40 to 45" miles per hour. When she first observed the truck, Tomasek stated that it appeared the driver had the vehicle under control. She looked away for two to five seconds. When she looked back, the truck was "still under control, but within a second, then it hit the curb." Based on her observations, no other vehicle made contact with the truck, cut off the truck, or was at all involved in the occurrence.
¶ 9 Officer Morgan testified that he was a deputy sheriff in Du Page County at the time of the accident, though he had since retired. He was the first responder on the scene after the accident. Modzelewski and Tomasek witnessed the accident and spoke to Morgan. Neither Modzelewski nor Tomasek mentioned that another vehicle was involved. He did not recall if Pritchett mentioned another vehicle, however, Morgan stated that his report did not indicate another vehicle. He said, "In the upper left corner [of the report], there is a place where I would have marked if there was another vehicle involved." Based on his training and practice, had any witness advised him that another vehicle was involved, he would have reflected that on his report. He gave two citations to Pritchett. One was a speed violation: either a citation for failure to reduce speed or too fast for conditions. The other citation was for improper lane usage. Morgan summarized on his report that "either through negligence in maintaining its lane usage and striking the curb or driving so fast that, when *347 trying to maintain the curve of the road, the truck tipped over." Pritchett appeared to be lucid and "had his faculties about him" when speaking to Morgan.
¶ 10 Carl Anderson testified that he was the president of Carl A. Anderson & Sons, Inc. Pritchett was employed as a truck driver for eight years for Anderson. He received a phone call at his office shortly after the accident. Anderson visited Pritchett at the hospital later that evening. Pritchett never told him there was another vehicle involved in the accident. Instead, Pritchett stated that he "honestly [could not] remember" what happened. The next day Anderson filled out a worker's compensation form. Anderson stated that had he had any occasion to believe another vehicle was involved in the accident, he would have written it on the form. He did not indicate on the form that another vehicle was involved.
¶ 11 The court took the matter under advisement and ultimately issued a written order stating:
"1. On August 1, 2017, the Court conducted a bench trial in this coverage action. The case involves a rollover semi-trailer truck accident that occurred on October 10, 2007, and whether there exists uninsured motorist coverage under Cincinnati Insurance Company policy ***.
2. On the day of the accident, Robert Pritchett was driving a semi-trailer truck loaded with gravel. His vehicle's front right tire hit the curb, and subsequently, Mr. Pritchett lost control of the truck and it fell over on its side.
3. A primary issue in this case is whether an unidentified 'phantom vehicle' caused Mr. Pritchett to swerve into the curb.
4. There was some discussion between the parties as to which side has the burden of proof, and what that burden is. The Court need not get into that issue because it would not make a difference in this case. Upon hearing the evidence and gauging the credibility of the witnesses, [the Court] finds that the existence of this phantom vehicle cannot be established. The Court further finds that Mr. Pritchett's testimony regarding the accident-in particular the existence of a phantom vehicle-was not credible.
5. In light of the factual findings in the foregoing paragraph, the Court further finds as follows:
A. The October 10, 2007 accident did not involve an 'uninsured motor vehicle' as discussed and defined in the Policy;
B. The Policy provides no uninsured motorist coverage;
C. Cincinnati Insurance Co. has no obligation to arbitrate, defend, or indemnify any claims that are based on a phantom-vehicle theory;
D. Judgment is entered for Cincinnati Insurance Co., and against Robert Pritchett ***."
¶ 12 ANALYSIS
¶ 13 On appeal, Pritchett argues that the court's findings were against the manifest weight of the evidence.
¶ 14 At the outset, we note the question in the circuit court was whether Pritchett's accident was covered under the uninsured motorist provision of the Cincinnati insurance policy. The policy stated that in order for coverage to apply in a hit-and-run scenario, "The vehicle must hit, or cause an object to hit, an 'insured,' a covered 'auto' or a vehicle an 'insured' is 'occupying.' If there is no physical contact with the hit-and-run vehicle, the facts of the 'accident' must be proved." Stated another way, if the court found that another vehicle caused Pritchett to swerve and hit the *348 curb, coverage would apply. Only if coverage was established would the parties be required to arbitrate their dispute. See Yapejian , 152 Ill. 2d 533, 178 Ill.Dec. 745, 605 N.E.2d 539.
¶ 15 Pritchett does not agree that this was the question before the court. Instead, he argues that the only question before the court was whether "a second vehicle was in the vicinity of [his] vehicle at the time of the occurrence." He then argues that the question of whether the vehicle caused the accident should have been an issue for arbitration. First, we note the multiple times in the record the court and the parties both state that in order for coverage to apply, the facts of the accident had to be proven, including the fact that another vehicle cut Pritchett off. Pritchett never objected in the circuit court that this was the question the court was to consider. In fact, Pritchett's attorney specifically stated that the court should believe Pritchett's story that another vehicle cut him off and stated that "in deciding whether a vehicle cut him off, *** [Modzelewski's] testimony should [not] be given any weight." Pritchett has thus forfeited this argument. Tully v. McLean , 409 Ill. App. 3d 659, 664, 350 Ill.Dec. 434, 948 N.E.2d 714 (2011). Second, even excusing the forfeiture, we find nothing in the record or case law to support Pritchett's contention. The policy provision clearly states that for coverage to apply in a hit-and-run accident where there is no physical contact with the hit-and-run vehicle, the facets of the accident had to be proven in order for coverage to apply. As stated above (supra ¶ 15), Illinois law does not require coverage disputes to be arbitrated. See Yapejian , 152 Ill. 2d 533, 178 Ill.Dec. 745, 605 N.E.2d 539 ; Shultz v. Atlantic Mutual Insurance Co. , 367 Ill. App. 3d 1, 10, 304 Ill.Dec. 562, 853 N.E.2d 94 (2006). We now turn to the question of whether the court's finding that a second vehicle did not cause the accident was against the manifest weight of the evidence.
¶ 16 "The standard of review that this court applies to a trial court's decision following a bench trial is to determine if the judgment is based on facts that are against the manifest weight of the evidence." Wade v. Stewart Title Guaranty Co. , 2017 IL App (1st) 161765, ¶ 59, 415 Ill.Dec. 559, 82 N.E.3d 763. "The manifest weight of the evidence standard affords great deference to the trial court because the trial court is in a superior position to determine and weigh the credibility of the witnesses, observe witnesses' demeanor, and resolve conflicts in their testimony." Id. A judgment is against the manifest weight of the evidence if (1) the opposite conclusion is apparent, or (2) the findings appear to be unreasonable, arbitrary, or not based on the evidence. Green v. Papa , 2014 IL App (5th) 130029, ¶ 32, 378 Ill.Dec. 724, 4 N.E.3d 607.
¶ 17 Here, Modzelewski and Tomasek both witnessed the accident and did not see another vehicle involved in the accident. While Tomasek stated that she did see another vehicle significantly ahead of Pritchett prior to the accident, it remained in the left lane the whole time. She also did not identify this vehicle as a light green sedan (Pritchett's identification). Moreover, both Anderson and Morgan testified that they talked to Pritchett after the accident, and he never mentioned to them that another vehicle was involved. Had he mentioned it to them, they both stated that they would have included that information on the police report and worker's compensation form. Neither the police report nor the worker's compensation form included such information. Though Pritchett testified that a light green sedan cut him off and caused him to swerve, no other evidence confirms this. More significantly, *349 the circuit court found Pritchett not credible. Supra ¶ 12. We defer to this credibility finding. Traveler's Insurance Co. v. Webster , 251 Ill. App. 3d 46, 49, 190 Ill.Dec. 373, 621 N.E.2d 242 (1993). Based on the evidence presented, the court found that the accident was not caused by a second vehicle and, therefore, the uninsured motorist coverage under the policy did not apply. We cannot say that the court's ruling was against the manifest weight of the evidence.
¶ 18 CONCLUSION
¶ 19 The judgment of the circuit court of Will County is affirmed.
¶ 20 Affirmed.
Justices McDade and Schmidt concurred in the judgment and opinion.